## Vaspourakan, Ltd. *vs.* Alcoholic Beverages Control Commission & another.

Suffolk.  September 10, 1987. — December 21, 1987.

Present: Hennessey, C.J., Wilkins, Liacos, Abrams, & Lynch, JJ.

*Administrative Law,* Judicial review, Substantial evidence, Hearing. *Quasi Judicial Tribunal. Notice,* Administrative hearing. *Alcoholic Liquors,* Revocation of license. *Anti-Discrimination Law,* Public accommodation.

The Alcoholic Beverages Control Commission, correctly applying the substantial evidence standard, was warranted in concluding that a liquor licensee, the operator of a nightclub, had discriminated against certain prospective patrons of the club because of their race. [350-353]

Findings of the Boston Licensing Board as to a liquor licensee's pattern of racially discriminatory conduct, which were adopted, after hearing, by the Alcoholic Beverages Control Commission, warranted the inference that the licensee had acted with a discriminatory intent. [353]

The record in a liquor license revocation proceeding did not support the licensee's claim that it had not received adequate notice of the racial discrimination charges brought against it. [353-354]

The Alcoholic Beverages Control Commission acted within its discretion in revoking the liquor license of the operator of a nightclub which had practiced racial discrimination relative to prospective patrons' admission to its premises. [354-356]

Civil action commenced in the Superior Court Department on November 25, 1983.

The case was heard by *John Paul Sullivan,* J., on a motion for summary judgment.

The Supreme Judicial Court on its own initiative transferred the case from the Appeals Court.

*David Berman* for the plaintiff.

*Charles E. Walker, Jr.,* Assistant Attorney General, for Alcoholic Beverages Control Commission.

Abrams, J. This is an appeal from a Superior Court judgment affirming a decision of the Alcoholic Beverages Control Com-

mission (commission) in which the commission affirmed a decision of the Boston Licensing Board (board) revoking the liquor license of the plaintiff, Vaspourakan, Ltd., doing business as "Cache" (licensee). The commission concluded that the licensee "made distinctions and discriminated on account of race, relative to the admission of persons to [its] licensed premises" in violation of G. L. c. 272, § 98, and rule 14[1] of the board's rules and regulations.

The licensee commenced an action in the Superior Court for judicial review of the commission's action pursuant to G. L. c. 30A, § 14. A Superior Court judge denied the licensee's application for a preliminary injunction staying the enforcement of the commission's decision.[2] The licensee moved for summary judgment. The licensee's motion for summary judgment was denied and summary judgment was entered for the commission pursuant to Mass. R. Civ. P. 56 (c), 365 Mass. 824 (1974). The Superior Court judge entered a memorandum of decision in which he concluded that the commission's findings and decision were "supported by substantial evidence, and that the evidence before the Commission supported its adoption of the Board's findings" He also determined "that the findings support the legal conclusion that the [licensee] engaged in discriminatory practices and that . . . the Commission was within its discretion in affirming the sanction imposed." The licensee appealed, arguing that (1) the commission's decision is not supported by substantial evidence; (2) the commission failed to make a required finding of intent to discriminate; (3) the notice of the charges brought was deficient; (4) the commission improperly adopted the findings and determinations of the board without deciding all issues of law and fact de novo; and (5) the sanction imposed — revocation of the liquor license —

---

[1] Rule 14 provides in relevant part: "No licensee shall make any distinction, discrimination or restriction on account of race, color, religious creed, national origin, sex or ancestry relative to the admission or treatment of any person."

[2] The docket reflects that the licensee sought preliminary relief staying the commission's order from three different Superior Court judges. Every judge denied the stay.

is grossly disproportionate to sanctions imposed in similar cases. We transferred the case to this court on our own motion. We affirm the judgment of the Superior Court.

We summarize the evidence. In 1983, the licensee operated a nightclub located at 1192-1198 Commonwealth Avenue in Allston. As a result of complaints of "selective discrimination" against blacks in its admissions policies, fifteen members of the "Community Disorders Unit" of the Boston police department conducted a series of investigations at the licensee's place of business at various times over the period between April 17 and May 2, 1983.

On several occasions during this investigation, plainclothes officers and detectives approached, entered, or attempted to enter the licensee's premises. On one of the nights of the investigation, three officers, two black males and one white female, were denied entry when they failed to produce a second form of photographic identification in addition to their valid Massachusetts driver's licenses. While they were detained at the door, the officers observed several white patrons enter without having to produce any identification. On another occasion, three plainclothes officers, all white, entered the licensee's premises without being detained or asked for any form of identification. One of those officers said that "the only people who were turned away on that evening were black people."

On each of the nights of the investigation, the police observed between 100 and 250 patrons enter the licensee's establishment. On four of these nights the police interviewed black individuals who were denied admission as to the reasons given to them for their exclusion. The reasons reported included improper attire, failure to produce two forms of identification, and lack of a "VIP" card issued by the licensee. However, the officers witnessed white patrons enter the premises on the same evenings who were dressed more casually than the blacks turned away, and who were not required to present any form of identification.

On Sunday night, April 17, 1983, one Charles Griffin, a forty-three year old black man from Cambridge, attempted to

enter the licensee's premises. The licensee's doorman informed him that "he would not be allowed to get in because he did not have a VIP card." Griffin asked how he might obtain such a card. The doorman responded that the club was closing in six months, and that a card therefore would serve no useful purpose to Griffin. An employee of the licensee conceded at the board hearing that Griffin did not look underage. Two weeks later, Lester Hayes, another black man, was denied admission to the licensee's premises for lack of a "VIP" card. The doorman referred Hayes to Sarkis Kavlakian, the owner, who told Hayes, "Come back Wednesday to get your V.I.P. card." Kavlakian admitted at the board hearing that he tells patrons to come back on Wednesday to get a VIP card if he wants to get rid of them. There is no one at the club during the day on Wednesdays to issue VIP cards.

Shortly after the police investigation, the Boston Licensing Board conducted hearings to determine whether the licensee did, in fact, discriminate against black persons in its admissions policy. After reviewing the testimony of twenty-two witnesses, six police reports, and other documentary evidence, the board rendered a "Decision and Statement of Reasons," including eighteen detailed subsidiary findings, wherein it voted to revoke the licensee's liquor license. The board expressly found "a deliberate pattern" of discrimination. The licensee appealed the board's decision to the commission pursuant to G. L. c. 138, § 67. After a hearing, the commission affirmed the action of the board. In its decision, the commission upheld the board's revocation of the plaintiff's license and incorporated by reference the board's statement of reasons.

1. *Substantial evidence.* The licensee argues that the decision of the commission must be reversed under G. L. c. 30A, § 14 (7) (1986 ed.), because there is no evidence that the black individuals who were excluded were denied admission due to their race. The licensee argues that the record shows that all the alleged incidents of discrimination occurred on Sunday, the club's busiest night, that overcrowding was a problem at the club, and that the alleged incidents of discrimination constituted nothing more than the licensee's legitimate, race-neu-

tral efforts to restrict entry to "preferred customers" who held "VIP" cards. We do not agree.

The evidence warrants the finding that the licensee on more than one occasion detained blacks at the door and forced them to produce more forms of identification than whites entering at the same time. The evidence also warrants the finding that the licensee excluded blacks allegedly because of their attire, even though they were dressed as well as, or better than, whites admitted at the same time. The commission considered evidence that the licensee at times admitted blacks to the licensee's premises and excluded whites. The commission concluded that the licensee limited the number of blacks it admitted, and excluded other blacks on the basis of race.[3] Based on the evidence, the commission could conclude that the licensee's proffered excuses were merely pretexts and that the licensee was discriminating against some persons because of race.

The licensee asserts that the evidence does not meet the substantial evidence standard. Substantial evidence is "such evidence as a reasonable mind might accept as adequate to support a conclusion." G. L. c. 30A, § 1 (6) (1986 ed.). *New Boston Garden Corp.* v. *Board of Assessors of Boston,* 383 Mass. 456, 466 (1981). Although we must consider the entire record and take into account whatever detracts from the weight of the evidence, *Cohen* v. *Board of Registration in Pharmacy,* 350 Mass. 246, 253 (1966), we do not make a de novo determination of the facts or draw different inferences from the facts found by the agency. *Southern Worcester County Regional Vocational School Dist.* v. *Labor Relations Comm'n,* 386 Mass. 414, 419-420 (1982). "A court may not displace an administrative board's choice between two fairly conflicting views, even though the court might justifiably have made a different choice had the matter been before it de novo." *Id.* See *School Comm. of Wellesley* v. *Labor Relations Comm'n,*

---

[3] The licensee asserts that the commission's findings are inadequate because it did not find that the licensee was a place of public accommodation. The argument is specious. In the first paragraph of its complaint, the licensee stated that it held an "all alcoholic common victualer's license" pursuant to G. L. c. 138, § 12. In its answer, the commission admitted that fact.

376 Mass. 112, 120 (1978); *Labor Relations Comm'n* v. *University Hosp., Inc.,* 359 Mass. 516, 521 (1971). See also *Smith College* v. *Massachusetts Comm'n Against Discrimination,* 376 Mass. 221, 224-225 (1978). Credibility of witnesses is for the agencies, see *Southern Worcester County Regional Vocational School Dist.* v. *Labor Relations Comm'n, supra* at 420-421, and the agency has the benefit of observing the witnesses in judging credibility. See *id.; Olde Towne Liquor Store, Inc.* v. *Alcoholic Beverages Control Comm'n,* 372 Mass. 152, 154 (1977). Further, the agency need not view each piece of evidence in isolation, but may consider all the evidence bearing on the licensee's conduct. The agency also is entitled to draw inferences from the evidence it finds credible. There was no error in concluding that there was substantial evidence of racial discrimination.

The licensee next suggests that because the anti-discrimination statute, G. L. c. 272, § 98, is a criminal statute, it is unclear what standard the commission was required to employ and that the commission did not clearly state what standard it did employ. Contrary to the licensee's argument, it is abundantly clear that substantial evidence is the appropriate standard regardless of whether the alleged violation is of a criminal statute or a regulation. See, e.g., *Saxon Coffee Shop, Inc.* v. *Boston Licensing Bd.,* 380 Mass. 919, 930 (1980); *United Food Corp.* v. *Alcoholic Beverages Control Comm'n,* 375 Mass. 238, 244 (1978); *Aristocratic Restaurant of Mass., Inc.* v. *Alcoholic Beverages Control Comm'n (No. 1),* 374 Mass. 547, 552, appeal dismissed, 439 U.S. 803 (1978); *Olde Towne Liquor Store, Inc.* v. *Alcoholic Beverages Control Comm'n, supra* at 153; *New Palm Gardens, Inc.* v. *Alcoholic Beverages Control Comm'n,* 11 Mass. App. Ct. 785, 789-790 (1981). The commission can determine whether a licensee has violated G. L. c. 272, § 98, for purposes of license revocation under the standard of G. L. c. 138, §§ 23 and 64, regardless of the existence or outcome of a criminal court proceeding. See *Arthurs* v. *Board of Registration in Medicine,* 383 Mass. 299, 317 (1981). See also *New Palm Gardens, Inc.* v. *Alcoholic Beverages Control Comm'n, supra* at 789-790.

The licensee also argues that the commission's decision is not based on substantial evidence because four of the seven persons found to have been discriminated against did not testify before the commission (although they did testify before the board), and thus the commission's findings regarding those four persons are based on hearsay. The licensee expressly stated before the commission that it did not object to introduction of the transcript of the board's proceedings. Thus, the licensee cannot now argue that the admission of the evidence was error. *Murray* v. *Second Dist. Court of E. Middlesex,* 389 Mass. 508, 515 (1983). The evidence was more than sufficient for the commission to determine that the licensee discriminated against blacks.

2. *Required findings of intent to discriminate.* We reject the licensee's argument that the agencies failed to make a required finding of intent to discriminate. The board expressly found "a deliberate pattern" of discrimination pursuant to which the licensee "permitted a limited number of black patrons to be admitted to the licensed premises and . . . established and instituted a system of discrimination in the further admission of black persons by arbitrarily and capriciously applying the requirements of: (a) 'proper dress'; (b) V.I.P. cards; [and] (c) Multiple picture identification cards." Those findings were adopted by the commission after a de novo hearing. Discriminatory intent could be inferred from the licensee's pattern of conduct directed against black persons.

3. *Inadequate notice.* The licensee's challenge to the adequacy of the notice it received from the board is not supported by the appellate record. Notice of violations is sufficient when it "affords the parties reasonable opportunity to prepare and present evidence." G. L. c. 30A, § 11 (1). Here the notice to the licensee stated: "That on April 17th, 24th, May 1st, 2d, 1983 you did make a distinction, discrimination or restriction on account of race or color relative to the admission of persons in a place of public accommodations, in violation of G. L. c. 272, section 98." This notice provided the licensee with ample opportunity to prepare for the hearing, and the licensee in fact presented eight witnesses at that hearing, Moreover,

by the time of the de novo hearing before the commission, any defect which might have existed in the notice was cured, because the licensee had detailed notice of all the facts supporting the charges brought against it. See *United Food Corp.* v. *Alcoholic Beverages Control Comm'n, supra* at 243. Agency action will be reversed only where "the substantial rights of any party may have been prejudiced." G. L. c. 30A, § 14 (7)(d) (1986 ed.). *Aristocratic Restaurant of Mass., Inc.* v. *Alcoholic Beverages Control Comm'n (No. 1), supra* at 551. No showing of prejudice, let alone substantial prejudice, has been made.

4. *De novo hearing.* The licensee admits that the commission could receive in evidence a transcript of the board hearing, *United Food Corp.* v. *Alcoholic Beverages Control Comm'n, supra* at 243, and that the commission could adopt the board's findings without making further findings. *Olde Towne Liquor Store, Inc.* v. *Alcoholic Beverages Control Comm'n, supra* at 155. The licensee's basic complaint seems to be that the commission should have made different findings based on the evidence presented in the de novo hearing. As already noted, however, the commission's findings are fully supported by substantial evidence.[4] See *supra* at 351-352.

5. *Disproportionate penalty.* The licensee argues that revocation of its license is a disproportionate penalty. It is unclear whether the licensee properly preserved its objection to the penalty. At oral argument, the licensee claimed that it placed the issue of disproportionate penalty in its notice of appeal to the commission. That notice is not in the record before us. The licensee did raise the issue of disproportionate penalty in the Superior Court. However, an issue not raised before the commission is deemed waived.[5] See, e.g., *Langlitz* v. *Board*

---

[4] The licensee's claim that the commission abdicated its responsibility to grant a de novo hearing pursuant to G. L. c. 138, § 67, and c. 30A, §§ 10-13, is frivolous. The licensee received a fresh adjudicatory hearing before the commission; it cross-examined all of the board's witnesses and presented eleven witnesses of its own, including four who did not testify before the board.

[5] The licensee's reliance on *Olde Towne Liquor Store, Inc.* v. *Alcoholic Beverages Control Comm'n, supra,* for the proposition that a penalty imposed by the board may be attacked for the first time before the Superior

*of Registration of Chiropractors,* 396 Mass. 374, 382 (1985); *Gurry* v. *Board of Pub. Accountancy,* 394 Mass. 118, 126 (1985); *Albert* v. *Municipal Court of the City of Boston,* 388 Mass. 491, 493 (1983). Clearly, the licensee here had ample opportunity to raise the issue of the severity of the board's sanction in its hearing before the commission. See, e.g., *Olde Towne Liquor Store, Inc.* v. *Alcoholic Beverages Control Comm'n,* 372 Mass. 152, 154-155 (1977); *Board of Selectmen of Clinton* v. *Alcoholic Beverages Control Comm'n,* 17 Mass. App. Ct. 905 (1983). See also G. L. c. 138, § 67, third par.[6]

Assuming the issue is properly presented, there is no error. It is "well settled that in reviewing the penalty imposed by an administrative body which is duly constituted to announce and enforce such penalties, neither a trial court nor an appellate court is free to substitute its own discretion as to the matter; nor can the reviewing court interfere with the imposition of a penalty by an administrative tribunal because in the court's own evaluation of the circumstances the penalty appears to be too harsh." *Levy* v. *Board of Registration & Discipline in Medicine,* 378 Mass. 519, 529 (1979), and cases cited. A court will interfere with the agency's discretion in this area "only . . . in the most extraordinary of circumstances." *Id.* at 528-529.

Revocation of a license is one of the sanctions provided by G. L. c. 138, § 64, and the licensee's own affidavits indicate that it is imposed regularly by the board and the commission.[7]

Court, is misplaced. In *Olde Towne Liquor Store,* the appellant properly preserved its argument of disproportionate penalty by raising it before the commission. *Id.* at 154-155.

[6] The licensee then had another opportunity to complain about the commission's upholding of that penalty through a request for administrative reconsideration pursuant to 801 Code Mass. Regs. § 1.01 (10) (p). See *Norway Cafe, Inc.* v. *Alcoholic Beverages Control Comm'n,* 7 Mass. App. Ct. 37, 40 (1979).

[7] In the Superior Court the licensee filed an affidavit which indicates that serious offenses such as drug sales on occasion resulted in penalties less severe than revocation. The licensee suggests that invidious discrimination may not be punished more severely than these other offenses. We disagree. Generally the range of penalties is for the agency. The commission was well within its authority in determining that racial discrimination is a most serious infraction.

Racial discrimination relative to admission to a place of public accommodation is a very serious offense. In support of its position, the licensee points to one other action in which the commission imposed a sanction of suspension based on a finding of a violation of G. L. c. 272, § 98. The licensee stresses that in that case the penalty was only a one-year suspension. A showing of a single lengthy suspension — itself a severe penalty — for a similar offense does not require a conclusion that the penalty imposed in this case is disproportionate.[8] There was no abuse of discretion in revoking the plaintiff's license.

*Judgment affirmed.*

---

[8] In the case the licensee points to, *In re Dartmouth Restaurant Corp.,* ABCC decision, June 11, 1985, the commission, citing the decision of the Appeals Court in *Board of Selectmen of Clinton* v. *Alcoholic Beverages Control Comm'n, supra,* assumed that the board imposed a long suspension instead of a revocation because of its view that a revocation could be appealed a second time to the commission pursuant to G. L. c. 138, § 67, sixth par., whereas a suspension carried no similar statutory right of reappeal.