29 Mass. App. Ct. 319                                         319

A. C. Cruise Line, Inc. *v.* Alcoholic Beverages Control Commission.

## A. C. CRUISE LINE, INC. *vs.* ALCOHOLIC BEVERAGES CONTROL COMMISSION.

No. 90-P-634.

Suffolk. June 20, 1990. - October 1, 1990.

Present: KASS, SMITH, & IRELAND, JJ.

*Alcoholic Liquors*, License, Sale to intoxicated person, Manager of premises. *Vessel*, Alcoholic liquors.

The evidence at a hearing before the Alcoholic Beverages Control Commission did not support its finding that the licensee had violated G. L. c. 138, § 69, by selling or delivering alcoholic beverages to an intoxicated person, where it was not shown that the third party who delivered the licensee's alcoholic beverages to the intoxicated person was an agent of the licensee or that the licensee knew the third party was acting as an intermediary for the intoxicated person. [322-325]

The provisions of 204 Code Mass. Regs. § 19.08 (1989), under which the Alcoholic Beverages Control Commission (ABCC) requires the captain of a vessel with a license for the sale of alcoholic beverages to take appropriate steps to protect passengers who appear to be intoxicated, unruly or a danger to themselves or others, were within the authority of the ABCC to promulgate under G. L. c. 138, § 13; nor were they preempted by Federal law or too vague to be enforceable. [325-326]

The evidence at a hearing before the Alcoholic Beverages Control Commission supported its finding that the licensee, a cruise ship company, failed to have on board its vessel a manager of record other than the ship captain in charge of service of alcoholic beverages, in violation of 204 Code Mass. Regs. § 19.06 (2) (1989). [326-327]

CIVIL ACTION commenced in the Superior Court Department on November 29, 1989.

The case was heard by *Margot Botsford*, J.

*Evan T. Lawson* (*Timothy R. McHugh* with him) for the plaintiff.

*Peter Sacks*, Assistant Attorney General (*Countess Williams*, Assistant Attorney General, with him) for the defendant.

SMITH, J. A.C. Cruise Line, Inc. (Cruise), brought an action in the Superior Court pursuant to G. L. c. 30A, § 14, seeking review of a decision of the Alcoholic Beverages Control Commission (ABCC). In its decision, the ABCC had ordered Cruise's license to sell alcoholic beverages suspended for a total of 371 days. The suspension resulted from the ABCC's determinations that Cruise had violated G. L. c. 138, § 69, and certain ABCC regulations.

We summarize some undisputed facts as background. In that connection, we have the advantage of a careful memorandum by the Superior Court judge who heard the c. 30A appeal. Cruise holds a license for the sale of alcoholic beverages on a vessel, issued pursuant to G. L. c. 138, § 13. On the evening of June 17, 1989, Cruise's vessel, the "Cape Ann," was privately chartered for an evening cruise in Boston harbor. The crew of the vessel consisted of Captain Alan D. Circeo, First Mate John Circeo, Robert Gallagher, two deck hands and four bartenders. Captain Circeo was the approved manager under G. L. c. 138, § 26, and Gallagher was approved as assistant manager under ABCC's ship regulations.

· Everett Hinnant, Jr., and a group of his friends including Kevin Estrella were members of the charter party. Prior to boarding the vessel, Hinnant and his friends attended a cookout in South Boston at which alcoholic beverages were consumed. After boarding the "Cape Ann" and prior to its departure, Hinnant jumped from the third deck of the "Cape Ann" to the pilot house of an adjacent tug boat and then jumped back to the "Cape Ann" as it was getting under way. Captain Circeo admonished Hinnant for his conduct.

The "Cape Ann" left its pier at approximately 8:00 P.M. Later in the voyage, passengers observed Hinnant balancing on a railing. At about 9:00 P.M. Hinnant was seen hanging upside down from the third deck railing. He slipped from there, fell overboard and drowned. Following an investigation, the ABCC charged Cruise with seven violations. After an evidentiary hearing, the ABCC upheld six of the charges.

The ABCC's charges and dispositions are as follows:

(1) Sale or delivery of alcoholic beverages to two intoxicated persons (Hinnant and Estrella), in violation of G. L. c. 138, § 69, and 204 Code Mass. Regs. § 19.12 (1989) — one-year suspension.

(2) Sale or delivery of alcoholic beverages to a minor, one Averill, in violation of G. L. c. 138, § 34, and 204 Code Mass. Regs. § 19.12 — six-day suspension to be served after the one-year suspension.

(3) Failure to have someone other than ship captain serve as manager of record in violation of 204 Code Mass. Regs. § 19.06(2) (1989) — one-year suspension concurrent with previously imposed one-year suspension.

(4) Failure of Gallagher, who had been approved as an assistant manager, to act in a managerial capacity — one-year suspension concurrent with previously imposed one-year suspension.

(5) Failure to check for proof of proper age of Averill before serving alcoholic beverages, in violation of 204 Code Mass. Regs. § 19.07(1) (1989) — six-day suspension for serving minor, concurrent with previously imposed six-day suspension.

(6) Failure to take appropriate steps to protect a passenger, who appeared intoxicated, unruly, or a danger to himself or others, in violation of 204 Code Mass. Regs. § 19.08 (1989) — one-year suspension concurrent with previously imposed one-year suspensions.

(7) Allowing passengers to bring alcoholic beverages on ship — dismissed.

After a hearing on Cruise's petition for review of the ABCC's decision, a Superior Court judge filed a memorandum of decision and an order for judgment. The judge found no substantial evidence to support the findings of a sale of

alcoholic beverages to Averill and failure to check for proof of his age. As a result, she struck the six-day suspensions imposed by the ABCC on the Averill-related charges. However, the judge upheld the other ABCC findings and affirmed the decision as modified.

Cruise raises three issues on appeal. They are that the ABCC (1) improperly imposed a duty on Cruise to prevent alcoholic beverages from coming into the possession of intoxicated persons, (2) lacked authority to promulgate regulations requiring ship captains to take steps to prevent intoxicated, unruly passengers from harming themselves, and (3) based its finding that Gallagher was not performing in a managerial capacity on less than substantial evidence.

1. *The charge of selling or delivering alcoholic beverages to an intoxicated person.* Cruise challenges the finding that, in violation of G. L. c. 138, § 69, as amended through St. 1987, c. 754, it sold or delivered alcoholic beverages to Hinnant while he was intoxicated.[1] That statute provides: "No alcoholic beverage shall be sold or delivered on any premises licensed under this chapter to an intoxicated person." Here, there was evidence that Hinnant, while intoxicated, drank several alcoholic beverages on board the vessel. There was no evidence, however, that Cruise had sold or delivered the alcoholic beverages to Hinnant or that it was aware that anyone had purchased such beverages for him. The judge ruled that G. L. c. 138, § 69, imposed "a duty of some kind on the licensee to prevent not only direct sales and deliveries on the licensed premises, but indirect as well."[2] She concluded that "the ABCC's ultimate finding that . . . Cruise violated § 69 [was] justified."

---

[1] Cruise does not challenge the finding that it sold alcoholic beverages to Estrella while he was intoxicated. There was evidence that Estrella was visibly intoxicated when he was served alcoholic beverages by the ship's bartenders.

[2] The ABCC's subsidiary findings on the sale or delivery of alcoholic beverages to Hinnant by Cruise stated that "[e]ven though there was no conclusive direct testimony that Hinnant was served at the bar, there was evidence that Hinnant repeatedly came into possession of alcoholic beverages, that the licensee was the source of these beverages, and the licensee knew or should have known that Hinnant was intoxicated and drinking

Cruise claims that the judge's interpretation of the statute is incorrect because this interpretation requires a licensee to exercise due care to guard against a third party's delivery of alcoholic beverages to an intoxicated person. It argues that this interpretation violates the intent of the statute and cites *Tiki Hut Lounge, Inc.* v. *Alcoholic Bevs. Control Commn.*, 398 Mass. 1001 (1986), in support of its argument. In that case, the licensee was charged with a violation of G. L. c. 138, § 34, as amended through St. 1982, c. 627, § 13. At the time of the alleged violation, that statute provided in relevant part: "Whoever makes a sale or delivery of any alcoholic beverages or alcohol to any person under twenty years of age, either for his own use or for the use of his parent or any other person . . . shall be punished . . . ." The ABCC contended in that case that G. L. c. 138, § 34, required a licensee "to exercise reasonable . . . care in preventing the delivery of liquor to a minor, that Tiki Hut failed to do so, and therefore the license suspension was proper." *Ibid.* The Superior Court judge set aside the decision, and the ABCC appealed. In its decision affirming the Superior Court, the Supreme Judicial Court stated that the only material subsidiary findings made by the ABCC to support its ultimate finding were that "investigators observed a youthful appearing nineteen year old female standing near the end of the bar . . . holding a half full bottle of beer that had been bought for her by an adult patron." *Ibid.* The court noted that "[t]here was no finding or evidence that the [adult] patron acted as an agent for Tiki Hut or that, when Tiki Hut sold or delivered the beverage to the patron, it knew that the patron was acting as an intermediary for the young woman."

---

alcoholic beverages being provided, directly or indirectly, by the licensee. The employees should have refused sales to him and prevented any delivery to him by an intermediary."

The judge ruled that there was substantial evidence to support "most" of the ABCC's findings quoted above. She did not, however, expressly state which of the ABCC's findings were not supported by substantial evidence. It appears to us from the judge's interpretation of G. L. c. 138, § 69, that she believed that there was not substantial evidence to find a direct sale to Hinnant by Cruise but that there was sufficient evidence to support a finding that alcoholic beverages were delivered to him by a third party.

*Ibid.* It ruled "[t]here simply is no language in c. 138, § 34, that reasonably may be construed as imposing a duty on a licensee to exercise reasonable care to assure that no alcoholic beverage will find its way into the hands of a person below the legal drinking age. The statutory language applicable to licensees focuses only on sales and deliveries." *Id.* at 1002.

We agree with Cruise that the decision in *Tiki Hut Lounge*, although involving a different statute, controls. Here, as in *Tiki Hut Lounge*, there was no finding or evidence that any third party who bought alcoholic beverages for Hinnant was acting as an agent for Cruise or that, when Cruise sold or delivered the beverage to any third party, it knew that the third party was acting as an intermediary for Hinnant. The language in § 69, as in § 34, focuses on "sales and deliveries" and is also similar in all other material respects. The ABCC argues that the consumption of alcohol at sea demands that extra precautions be taken by the licensee, but § 69 focuses only on sales and deliveries and makes no special provision for sales and deliveries of alcoholic beverages at sea. "We do not imply language in a statute if the Legislature has not provided it." *New England Power Co.* v. *Selectmen of Amesbury*, 389 Mass. 69, 74-75 (1983).[3]

The ABCC argues that the differences in the voices (passive vs. active) employed in § 34 ("Whoever makes a sale or delivery of any alcoholic beverages . . .") and in § 69 ("No alcoholic beverage shall be sold or delivered . . .") imposes a duty in the latter case on a licensee to supervise indirect delivery. We realize that the canons of statutory construction are like greeting cards — there seems to be one for every occasion. However, no authority is cited by the ABCC in support of its argument and we are not aware of any. Fur-

---

[3]The ABCC attempts to distinguish *Tiki Hut Lounge* by arguing that the *Tiki Hut Lounge* decision did not discuss the significance of G. L. c. 138, § 64, and its requirement that the licensee not permit any violations of law by others on the premises. However, Cruise was never charged with a violation of G. L. c. 138, § 64, and it is clear that the ABCC based its decision solely on G. L. c. 138, § 69. Therefore, we do not consider the ABCC's argument.

ther, we believe the argument is unpersuasive because it depends on a subtle grammatical distinction between disparate sections in a complex and frequently amended statutory scheme.

We do not perceive in § 69 "a duty on a licensee to exercise reasonable care to assure that no alcoholic beverage will find its way into the hands of . . . [an intoxicated person]." *Tiki Hut Lounge, Inc., supra* at 1002. The finding that Cruise sold and delivered alcoholic beverages to Hinnant while he was intoxicated is vacated.

2. *Failure of the ship captain to take appropriate steps to protect Hinnant.* An ABCC regulation (204 Code Mass. Regs. § 19.08) states in relevant part that "[t]he captain shall take all appropriate steps to protect passengers who appear to be intoxicated, unruly or a danger to themselves or to others. Appropriate steps may include placing such passengers in a secure area." The ABCC did not focus on the "intoxicated" portion of the regulation. It determined that the captain did not take the appropriate steps to protect Hinnant "who was unruly and a danger to himself, although Hinnant had indulged in repeated death-defying stunts." Cruise claims that the regulation is beyond the scope of the ABCC's regulatory powers because, according to its submission, it gives the ABCC "a say in the manner in which the captain runs his vessel wholly apart from alcoholic beverages service."

The ABCC's authority to regulate the licensing of ship owners to sell alcohol is governed by G. L. c. 138, § 13, as inserted by St. 1935, c. 440, § 10. That statute provides, in relevant part: "The commission may . . . issue licenses to sell alcoholic beverages to the owner or operator of any vessel . . . carrying passengers and operating out of any port of the commonwealth. Sales of alcoholic beverages by licensees under this section shall be made only under such regulations as the commission may prescribe."

The presence and the consumption of alcohol on board those vessels that are engaged in "harbor" cruises present unique problems. On such a cruise, the licensee, unlike the

licensee who runs a business on shore, cannot summon the police for assistance in maintaining order and controlling unruly persons. The licensee of the vessel must take full responsibility, therefore, of controlling the conduct of everyone on board. Even the sober, but unruly, passenger may present a danger to himself and to others because of the consumption of alcohol by other passengers. In adopting such a regulation, the ABCC could reasonably conclude that a captain who fails to keep order among the passengers, whether they are sober or not, is not capable of fulfilling the important responsibilities that accompany the possession of a liquor license. Therefore, a licensee's conduct, though not directly involving the sale of alcohol, may still have a strong bearing on the question of fitness of the licensee to sell alcohol, particularly in the isolated world of cruises of the type run by Cruise.

Cruise argues that the ABCC's regulation is preempted by Federal law. Cruise has not cited any Federal regulation or standard that would preempt the regulation requiring a captain to take "appropriate" steps. The ABCC regulations concerned with ship regulations expressly state that they are not to be construed as "limit[ing] in any way the power and authority of the Captain of the ship under the Law of the Sea." 204 Code Mass. Regs. § 19.14 (1989). The regulation under attack here does not exceed those limits.

Cruise's argument that the "appropriate steps" requirement is too vague to provide adequate guidance to ship captains is without merit. Taken in context, it is clearly apparent that the captain is enjoined to do whatever is reasonable to assure that disorderly passengers are controlled to the extent necessary to keep them from endangering themselves, other passengers, or the vessel itself. The precise steps to be taken will vary with the circumstances and the vessel.

3. *Failure of Gallagher to function in a managerial capacity.* An ABCC regulation (204 Code Mass. Regs. § 19.06) provides that each ship must carry a manager of record approved by the ABCC and that, on a ship carrying fifty or more passengers, the manager of record must be a person other than the captain. The "Cape Ann" had a capacity of

539 and was carrying over 200 passengers on June 17, 1989. Gallagher was assistant manager of record on board that night. The ABCC found that Gallagher was not functioning in a managerial capacity and that the captain was acting as manager, in violation of 204 Code Mass. Regs. § 19.06. Cruise argues that substantial evidence did not support that finding. We disagree.

There was evidence before the ABCC that a bartender made the decision to "shut off" Estrella. Gallagher's role was limited to informing other bartenders of that decision. First Mate John Circeo then made the decision that a crew member should be assigned to watch Estrella and assigned Gallagher to perform that function. There was further evidence that the captain, not Gallagher, was the person in charge of making decisions in regard to the service of alcohol on the night in question. The credibility of a witness is for the ABCC to determine. *Vaspourakan, Ltd.* v. *Alcoholic Bevs. Control Commn.*, 401 Mass. 347, 352 (1987). In sum, there was substantial evidence that it was the captain, not Gallagher, who made the managerial decisions in regard to the serving of alcohol on the night in question.

4. *Conclusion.* Cruise has requested that, if we set aside the ABCC's determination that it sold or delivered alcoholic beverages to Hinnant, we remand the matter to the ABCC for it to review the one-year suspension of Cruise's license. We note, however, that the ABCC imposed several one-year suspensions, not just the one on the Hinnant matter. We are reluctant to interfere with penalties imposed by the ABCC even if the penalty appears to be too harsh. *Id.* at 355. Therefore, we deny Cruise's request.

That portion of the Superior Court judgment affirming the determination of the ABCC that Cruise sold or delivered al-

coholic beverages to Hinnant is vacated. The other portions of the judgment are to stand.

*So ordered.*