Cratsley, J.
The plaintiff appeals from a decision of the Board of Education pursuant to G.L.c. 30A, §14. The plaintiff asserts that the decision was unsupported by substantial evidence in that it was based entirely upon hearsay. The plaintiff also contends that he was not afforded a hearing within the time prescribed by the Code of Massachusetts Regulations. The defendant argues that its decision was based upon substantial evidence and the plaintiff has failed to show that he was prejudiced by the hearing delay. For the reasons stated below, this matter is remanded to the Board of Education for further hearings consistent with this opinion.
BACKGROUND
The plaintiff, William J. Kates (Kates), held various teaching certificates issued by the Bureau of Teacher Certification (Bureau) on behalf of the Board of Education (Board). Kates’s teaching certificates included school psychologist, school adjustment counselor, teacher of children with moderate special needs, teacher of secondary level mathematics, and teacher of secondary level social studies.
On September 18, 1991 Kates was hired by Superintendent of the Dedham Schools, Thomas J. Curran (Curran), as the school psychologist for Dedham High School. While at Dedham High School, Kates counseled approximately 25 students. Of those 25 students, four female students alleged that he initiated sexually explicit conversations during their individual counseling sessions. To preserve the students’ anonymity, the hearing officer referred to the four students as “Abbie,” “Betty,” “Cathy,” and “Debbie.”
On October 11, 1991 Abbie informed the school nurse about Kates’s alleged misconduct during her counseling session. A counselor from Abbie’s counseling group, NORCAP, also contacted the school nurse as well as the school principal to report Kates’s alleged behavior towards Abbie. The school principal immediately contacted Curran to report the allegations. Cur-ran visited the school to interview Abbie, Betty, Cathy, and Debbie.[1]
Curran interviewed the four students collectively. Each student alleged inappropriate conversations concerning sexual matters that were initiated by Kates during their individual counseling sessions. Following the interviews, Curran met with Kates and a teachers’ union representative. The special education director, vice principal, and school nurse were also present at the meeting. Curran informed Kates that there was evidence that he abused his position as school psychologist. Curran offered Kates the option of resignation or termination.[2] Kates chose to resign from his position as school psychologist.
On October 16, 1991 Curran filed a complaint with the Bureau to revoke Kates’s teaching certificates.[3] In January of 1992 representatives from the Bureau interviewed Curran, the school nurse, the principal, the assistant principal, the director of special education, the president of the Dedham Teachers Association, a psychologist from the Dedham Middle School, a counselor from Abbie’s counseling group, and Kates. Nancy Olin (Olin), a Bureau representative, individually interviewed Abbie, Betty, Cathy, and Debbie. The school nurse was present during these interviews. The allegations made to Olin by the four students were very similar to those made to Curran three months earlier. Following the interviews, the Bureau determined that there was probable cause to revoke Kates’s teaching certificates.[4]
*113 Pursuant to 603 CMR 7.02(23)(b)(2) the Bureau notified Kates that it found probable cause to revoke his teaching certificates and that he was entitled to a hearing to challenge this finding. Kates requested a hearing on May 6, 1992. Due to the retirement of the Board’s hearing officer a hearing was not scheduled until January 29, 1993.
On January 21, 1993 Kates moved to dismiss the Board’s action. Kates alleged that the Board violated 603 CMR 7.02(23)(c).[5] On March 1, 1993 the Board denied Kates’s request. A pretrial conference was held on March 15, 1993. The hearings were ultimately held on April 28 and 30, May 19, and 26, and June 17, 1993.
Curran and Olin testified as to their interviews with the four students. Olin introduced the Bureau’s written findings with respect to probable cause into evidence. Kates testified on his own behalf. Kates’s notes, which were taken during the individual counseling sessions with Abbie, Betty, Cathy, and Debbie, were also introduced into evidence. Neither Abbie, Betty, Cathy, nor Debbie testified at the hearing.
On July 23, 1993 the Board’s hearing officer issued his written decision. The hearing officer determined that the'Bureau met its burden of demonstrating that there was probable cause to revoke Kates’s teaching certificates. This appeal to the Superior Court followed in a timely manner the hearing officer’s decision rendered on behalf of the Board.
DISCUSSION
The party appealing an administrative decision bears the burden of demonstrating the decision’s invalidity. Merisme v. Board of Appeals on Motor Vehicle Liab. Policies & Bds., 27 Mass.App.Ct. 470, 474 (1989); Faith Assembly of God v. Stage Bldg. Code Comm’n., 11 Mass.App.Ct. 333, 334 (1981), citing Almeida Bus Lines, Inc. v. Department of Pub. Utils., 348 Mass. 331, 342 (1965). In reviewing the agency decision, the court is required to give due weight to the agency’s experience, technical competence, specialized knowledge, and the discretionary authority conferred upon it by statute. Flint v. Commissioner of Publ. Welfare, 412 Mass. 416, 420 (1992); Seagram Distillers Co. v. Alcoholic Beverages Control Comm’n., 401 Mass. 713, 721 (1988); Quincy City Hosp. v. Labor Relations Comm’n., 400 Mass. 745, 74849 (1987). The reviewing court may not substitute its judgment for that of the agency. Southern Worcester County Regional Vocational School Dist. v. Labor Relations Comm’n., 383 Mass. 414, 42021 (1982), citing Olde Towne Liquor Store Inc. v. Alcoholic Beverages Control Comm’n., 372 Mass. 152, 154 (1977). A court may not dispute an administrative agency’s choice between two conflicting views, even though the court would justifiably have made a different choice had the matter come before it de novo. Zoning Bd. of Appeals of Wellesley v. Housing Appeals Comm’n., 385 Mass. 651, 657 (1982). New claims may not be raised on appeal if they were not raised at the Administrative Appeal. M.H. Gordon & Son, Inc. v. Alcoholic Beverages Control Comm’n., 386 Mass. 64, 73 (1982); Shamrock Liquors, Inc. v. Alcoholic Beverages Control Comm’n., 7 Mass.App.Ct. 333, 335 (1979). A reviewing court may order that “additional evidence be taken before the agency” only upon a showing that it is “material” and that there is “good reason” for failure to present it in the original proceeding. Benmosche v. Board of Registration in Medicine, 412 Mass. 82, 88 (1922).
Substantial Evidence
Kates argues that the Board’s decision was based entirely upon hearsay and therefore unsupported by substantial evidence. Kates challenges that the fact that none of the four students testified at the hearing and their unavailability was not established.
The Board’s decision clearly rested upon hearsay. The hearsay consisted of Curran and Olin’s testimony as to the allegations of the four students as well as the Bureau’s written findings as to probable cause. The question before this Court is whether this type of hearsay constitutes substantial evidence.
Substantial evidence is “such evidence as a reasonable mind might accept as adequate to support a conclusion.” Vaspourakan, Ltd. v. Alcoholic Beverages Control Commission, 401 Mass. 347, 351 (1987). The lead case in this area is Sinclair v. Director of the Division of Employment Security, 331 Mass. 101 (1954). The Sinclair court held that evidence which is exclusively hearsay does not constitute substantial evidence. Id. at 103. The Sinclair decision was explained in Embers of Salisbury, Inc. v. Alcoholic Beverages Control Commission, 401 Mass. 526 (1988). The court in Embers noted that “[a]lthough in that case [Sinclair] we said that ‘[i]f the pertinent evidence is exclusively hearsay, that does not constitute ’’substantial evidence" even before an administrative tribunal . . .’ the line we were drawing was not between evidence admissible in a court and evidence that is inadmissible because of the rules of evidence observed by courts, but between evidence having indicia of reliability and probative value and that which does not." Embers, 401 Mass. at 530. This Court must, therefore, focus on whether the hearsay evidence in the instant case was reliable and had any probative value.
As stated above, the hearsay in this case consisted of the testimony of Curran and Olin as well as the Bureau’s written findings. In Embers, the high court held that the Alcoholic Beverages Control Commission could assign probative weight to a transcript from a prior criminal proceeding. Id. at 53031. The Embers court noted that the previous testimony was given in open court, under oath, and subject to cross-examination. Embers, 401 Mass. at 530. In addition, certain aspects of the transcript were corroborated by stipulated testimony. Id. at 531. In Merisme v. Board of Appeals on Motor Vehicle Liability Policies & Bonds, *114 supra, the court held that a hearsay statement in a police report was not substantial evidence to support the agency’s decision. Neither the declarant nor the author of the police report testified at the hearing. Id. at 476. The Merisme court found that the police report did not rise to the same level of reliability and trustworthiness as the trial transcript in Embers. Merisme, 27 Mass.App.Ct. at 475.
The instant case falls somewhere between Embers and Merisme. The testimony of Curran and Olin as well as the Bureau’s written findings do not possess the heightened probative value of the trial transcript in Embers. Yet the testimony and written findings are not as unreliable as the statement in the police report in Merisme. This Court finds the case of Ruguero v. Teacher Standards and Practices Commission, 822 P.2d 1171 (1991), persuasive. In Ruguero, the plaintiff sought reinstatement of his expired teaching license. Ruguero, 822 P.2d at 1173. The Teacher Standards and Practices Commission (TSPC) denied the plaintiffs reinstatement. Id. at 1174. The TSPC determined that the plaintiff had engaged in inappropriate sexual behavior with two students. Ruguero, 822 P.2d at 1174. The TSPC based its determination upon the testimony of a deputy district attorney, a school counselor, and a police officer regarding the student’s allegations. Id. at 117778. A 25-page police report was received into evidence. Ruguero, 822 P.2d at 1178. The police report summarized the investigation of the plaintiff and included statements made by the accusers and other students. Id. As in the present case, the accusing students did not testify at the hearing. Ruguero, 822 P.2d at 1181. The TSPC based its decision entirely upon hearsay. Id.
Rejecting the hearsay statements as substantial evidence, the Ruguero court held that, “(w]hen un-sworn hearsay constitutes the major (in this case, the entire) support for the administrative decision, the importance of providing the adversary (here, the petitioner) with the opportunity to test on cross-examination each of the available declarants’ perception, memory, narration, and veracity is undeniable. TSPC had no basis for evaluating the credibility of the declarants of the challenged hearsay on which it based its order.” Ruguero, 822 P.2d at 1182. The Ruguero court further held that, “(e]ven where hearsay is sufficiently reliable to be admissible and might be relied on when the consequences of the decision would be minor, that same hearsay might not be relied on when the consequences of the decision would be a profound impact on, for example, the ability of an individual to pursue a chosen profession.” Id. at 1183.
This Court concurs with the reasoning of Ruguero. The disposition of this case hinged upon a credibility determination by the hearing officer acting for the Board. The only direct evidence of misconduct before him was the allegations of the four students presented via hearsay. The only countervailing evidence was the live testimony of Kates. This Court recognizes that factual disputes and matters of credibility are for the hearing officer and Board and not this Court to resolve. Greater Media, Inc. v. Department of Public Utilities, 415 Mass. 409, 417 (1993), citing Martorano v. Department of Public Utilities, 401 Mass. 257, 261 (1987). The hearing officer and thus the Board, however, found the students’ accusations to be credible without the benefit of their direct testimony. “When the alternative to relying on hearsay is to get the better evidence that is readily available, refusing to rely on the hearsay is appropriate ... 3 Davis, Administrative Law Treatise, 43 (2d ed. 1980). It is beyond question that the students’ direct testimony is better evidence than their hearsay statements.” Ruguero, 822 P.2d at 1181. There is no indication in the record that the four students were not available to testify. Nor is there any evidence that special arrangements were considered to allow them to testify in a protected manner due to their ages or sensitivities.
The Board argues that Kates waived his right to cross-examination of the four students when he failed to compel them to appear and testify before it. While Kates had the right to call the four students to testify, the burden of proving that Kates was unfit to hold any certificates remained with the Bureau. The Bureau was charged with presenting substantial evidence to support its allegations that Kates was guilty of initiating sexually explicit conversations with four female students. This Court concludes that the Bureau did not meet its burden by offering unreliable hearsay statements.
The Bureau also alleges that Kates’s counseling notes corroborate the hearsay testimony. This Court disagrees. Kates’s counseling notes do suggest that discussions regarding sexual topics such as dating, kissing, prostitution, sexual intercourse, and rape took place during the individual counseling sessions. They do not, however, corroborate the allegations that Kates initiated the sexual conversations with the students. Olin herself opined that discussions about sex during school counseling sessions are not per se improper, but would be inappropriate when not initiated by the student.
Finally, the Board argues that Kates’s testimony corroborates the students’ allegations in that Kates was able to identify each of the four students by their first names although the Board referred to the four students by their pseudonyms. Once again, this Court disagrees. This Court finds that Kates’s testimony does not corroborate each student’s particular allegations.
Overall, the hearsay evidence in this case does not carry with it the same level of reliability and probative value as the prior sworn testimony held to be determinative by the Supreme Judicial Court in Embers. The students’ statements were not under oath, in open court, and subject to cross-examination. Further *115 more, there was no corroboration of the hearsay statements. Therefore, the hearing officer and thus the Board exceeded its authority in relying upon the hearsay statements in this case. The record does not contain substantial evidence to support the Board’s decision.
Procedural Delay
On May 6,1992 Kates promptly requested a hearing before the Board upon notification of the finding of probable cause to revoke his certificates. A hearing was scheduled eight months after Kates’s request. The Code of Massachusetts Regulations provides that a hearing “shall” be scheduled not later than 60 days after receipt of the request. 603 CMR 7.02(23)(c). To obtain relief from the Board’s decision on a claim of procedural delay Kates must demonstrate that his substantial rights have been prejudiced. Amherst-Pelham Regional School Committee v. Department of Education, 376 Mass. 480, 497 (1978), citing Duato v. Commission of Publ. Welfare, 359 Mass. 635, 640 (1971), and Clarke v. Board of Collegiate Auth., 327 Mass. 279, 282 (1951).
Kates may well have been prejudiced by the eight-month delay. Although Kates continued to hold his certificates, for all practical purposes he could not obtain other employment. The stigma of these charges remained with him throughout the eight-month delay.
The Board argues that the 60-day requirement is “a regulation for the orderly and convenient conduct of public business and not a condition precedent to the validity of the act done.” Amherst-Pelham, 376 Mass. at 496. On the other hand, the regulation contains mandatory language. Furthermore, revoking an individual’s teaching certificates strips him of the ability to practice his chosen profession. The 60-day requirement ensures that the revocation procedure takes place as quickly as possible without undue delay and prejudice to a teacher.
Because the previous discussion results in an order of remand to the Board who may proceed to hold a new revocation hearing, the issue of delay in scheduling any new hearing merits discussion. While not necessary to this Court’s decision, a court could have found that the eight-month delay in hearing this matter harmed Kates’s substantial rights in resolving the allegations and moving on with his life. Any new hearing should comply with the statute.
Conclusion
In conclusion, this Court finds that the Board did not have substantial evidence before it to justify the revocation of Kates’s teaching certificates. Therefore, the decision of their hearing officer of July 23, 1993 is set aside and a new hearing is required.
ORDER
For the foregoing reasons, it is ORDERED that the final decision of the hearing officer for the Board of Education dated July 23, 1993 is set aside, and this matter is REMANDED to the Board of Education for further hearings consistent with this opinion to be held within 60 days of the Board’s new decision to revoke plaintiffs licenses.

The record is absent of any information as to how Curran learned of the alleged sexual misconduct with Betty, Cathy, and Debbie.

Kates was an employee for fewer than 90 days and therefore was not entitled to grievance procedures.

 603 CMR 7.02(23)(b) provides that “(n]o certificate may be revoked until: (1) the Bureau upon receipt of a written complaint has determined that there is probable cause to find that the holder’s certificate may be revoked for one or more of the grounds set forth in 603 CMR 7.02(23)(a), 1 through 5, and (2) The Bureau sends written notice to the holder of the certificate of its determination of probable cause and the holder’s right to request a hearing before the Board or its designee in accordance with G.L.c. 30A, and 801 CMR 1.00. The holder shall have 21 days from the date the notice is sent in which to make a written request for a hearing . . .”

 603 CMR 7.02(23)(a) provides that “(t]he Board or its designee may revoke a certificate if it is determined that: (1) the certificate was obtained through fraud or the misrepresentation of a material fact; (2) the holder of the certificate is unfit to perform the duties for which the certificate was granted; (3) the holder of the certificate is convicted in a court of law of a felony involving moral turpitude or of any other felony of such nature that in the opinion of the Board the person so convicted discredits the profession or brings into disrepute the certificate; (4) the holder has obtained a Massachusetts certificate as the result of certification in another state ... and that state has revoked the holder’s certification for reasons which are sufficient for revocation of a Massachusetts certificate; or (5) there exists other good cause for revocation of the certificate.”

 603 CMR 7.02(23)(c) provides, in pertinent part, that “a hearing shall be scheduled by the Board or its designee not later than 60 days after receipt of the request.”