## JEAN T. MERISME *vs*. BOARD OF APPEALS ON MOTOR VEHICLE LIABILITY POLICIES AND BONDS.

No. 88-P-93.

Suffolk. November 15, 1988. — June 20, 1989.

Present: ARMSTRONG, KAPLAN, & BROWN, JJ.

*Insurance*, Motor vehicle insurance, Surcharge. *Motor Vehicle*, Insurance. *Administrative Law*, Substantial evidence. *Evidence*, Administrative proceeding, Hearsay.

On a motorist's appeal to the Board of Appeals on Motor Vehicle Liability Policies and Bonds from the imposition of an automobile insurance surcharge following a motor vehicle accident, the hearing officer incorrectly applied a presumption of fault appearing at 211 Code Mass. Regs. § 74.04(11) (1986), in upholding the surcharge [473], and further, where hearsay statements in a police officer's accident report were the only evidence relied upon, the board's decision was not supported by substantial evidence, and the motorist was entitled to a new hearing [473-476].

CIVIL ACTION commenced in the Superior Court Department on June 8, 1987.

The case was heard by *Walter E. Steele*, J.

*Caroline B. Playter* for the plaintiff.

*Richard M. Brunell*, Assistant Attorney General, for the defendant.

BROWN, J. Following an automobile accident, the Commerce Insurance Company (Commerce) pursuant to G. L. c. 175, § 113B, imposed a driver merit rating surcharge against its insured, the plaintiff here, Jean T. Merisme. Merisme petitioned, under G. L. c. 175, § 113P, for review of that decision to the Board of Appeals on Motor Vehicle Liability Policies and Bonds (board). The board upheld Commerce's imposition of the surcharge. See 211 Code Mass. Regs. § 88.12 (1986). Merisme then appealed the board's decision to the

Superior Court. Following an adverse decision, the plaintiff now appeals to this court.

On January 30, 1987, a car driven by Merisme and another car operated by one Andrew Clary collided at the intersection of Blue Hill Avenue and Walk Hill Street in Mattapan. This intersection is controlled by traffic signal lights. The central factual dispute is over which car drove through a red light thereby causing the accident. Each driver claims that the other was at fault.[1]

A police officer who responded to the scene filed an accident report which indicates that one Aaron Cardy, who allegedly witnessed the accident, stated to the officer that Merisme caused the accident by going through the red light.[2] The police accident report mentions no other witnesses. The record does not make clear whether the officer was able to, or even attempted to, communicate with Merisme at the scene of the accident.[3] Based on the contents of this police report the insurer concluded that Merisme was more than fifty percent at fault, and accordingly assessed the surcharge against him.[4]

On Merisme's appeal of the surcharge to the board, the insurer relied exclusively on the contents of the police report, offering no direct testimony either from the alleged witness who made the statement or from the police officer who made

---

[1] There can be no doubt that one of the two drivers faced a red stop light just prior to the accident.

[2] The report also stated that the officer had observed that the plaintiff's brakes were low after the accident. This seems to have little or no bearing on the decision, and it was not mentioned by the hearing officer in her findings.

[3] In his brief Merisme claims to speak very little English.

[4] Finding Merisme more than fifty percent at fault in the underlying accident carries serious ramifications. It may preclude him from bringing a claim for personal injuries incurred in the accident. See *Almeida* v. *Travelers Ins. Co.*, 383 Mass. 226, 229-231 (1981). What is particularly disturbing here is that the insurance company may have insured both cars involved in the accident. The record is not clear on this point. In his brief the plaintiff, however, states that Commerce did insure both cars. It may well be that by assessing a surcharge against the party who appears to have sustained personal injuries, the insurance company could effectively avoid paying the claim.

the report. Merisme disputed the hearsay statements and claimed that, in fact, it was the other driver who proceeded through a red light. In addition to his own testimony, Merisme offered a written statement by another alleged witness to the accident, one Ancie Louture. Louture claimed that, while walking home, she saw the accident, and that it was not Merisme's car, but the other car that went through the red stop signal. Her statement also indicates that immediately following the accident, the driver of the other car, who had been driving alone, disappeared into a nearby restaurant and then reappeared with another man.[5] It seems that she did not stay at the accident scene because she did not believe she knew anyone involved.[6] Merisme, aware of her presence, later contacted her to get her statement.

In a written decision and addendum, the hearing officer concluded: (1) that Louture was a biased witness because of her admitted acquaintance with Merisme and because she was not mentioned in the police accident report as having been at the scene,[7] and (2) that Merisme had been unable to overcome the presumption against him of greater than fifty percent fault raised by the "Standard of Fault" provisions governing the board. The hearing officer resolved the conflicting factual versions of the accident against Merisme on the basis of the hearsay testimony contained in the police report and on the presumption under the "Standard of Fault" provisions. The imposition of the surcharge was upheld.

In reviewing the decision of the board, we observe the rule that "[i]t is for the [board], not the courts, to weigh the credibility of witnesses and to resolve factual disputes. 'A court

---

[5] This could be Aaron Cardy, the witness mentioned in the police report. That, however, is not clear from her account. Merisme, on the other hand, seemed to have been under the impression that Cardy was a passenger in the other car.

[6] Louture in her written statement submitted to the board stated, "I later learned that the man who was driving on Blue Hill Avenue was Jean Merisme with whom I am distantly acquainted."

[7] From the record on appeal we are in no position to conclude whether she was present at the scene or not. The scant police report does not indicate either way.

may not displace an administrative board's choice between two fairly conflicting views, even though the court would justifiably have made a different choice had the matter been before it de novo.' " *Embers of Salisbury, Inc.* v. *Alcoholic Beverages Control Commn.*, 401 Mass. 526, 529 (1988.) However, ". . . to the extent that an agency determination involves a question of law, it is subject to de novo judicial review." *Raytheon Co.* v. *Director of Div. of Employment Security*, 364 Mass. 593, 595 (1974).

A. *The Presumption of Fault.*

In his written findings the hearing officer referred to the presumption under "Standard of Fault code 11" which appears at 211 Code Mass. Regs. § 74.04(11) (1986). This provision substantially tracks the language of G. L. c. 89, § 8, as amended through St. 1986, c. 232, § 2. It is plain, however, that those two provisions are not applicable here because the particular intersection in question was controlled by traffic signal lights. The hearing officer made a clear error of law.[8] As we conclude that the presumption is inapposite here, we are left only with the question whether the hearsay testimony in the police report, by itself, is "substantial evidence" to support the board's decision.

B. *Substantial Evidence.*

Relying on *Sinclair* v. *Director of the Div. of Employment Security*, 331 Mass. 101, 103-104 (1954), Merisme asserts that as matter of law this type of hearsay, without more, is not "substantial evidence" to support the board's decision. The hearsay statement in issue, so-called second level or totem

---

[8] In pertinent part, G.L. c. 89, § 8, reads: "When two vehicles approach or enter an intersection of any ways . . . at approximately the same instant, the operator of the vehicle on the left shall yield the right-of-way to the vehicle on the right. . . . The foregoing provisions of this section *shall not apply* when an operation is otherwise directed by a police officer, or *by a lawful traffic regulating sign, device or signal* [emphasis added] . . . ."

Similarly, Fault Code 11 states: "Collision at an uncontrolled intersection. An operator of a vehicle . . . which is in collision with another vehicle at an *uncontrolled intersection* [emphasis added] shall be presumed to be at fault in excess of 50% if (a) both vehicles entered the intersection at the same time, and such operator's vehicle entered the intersection from the left of the other vehicle . . . ."

pole hearsay, would be inadmissible in a court of law. See *Kelly* v. *O'Neil*, 1 Mass. App. Ct. 313, 317 (1973) ("A [business] record admissible under that exception may not contain second level hearsay"). See also *Commonwealth* v. *Alves*, 6 Mass. App. Ct. 572, 582-583 (1978) (second level hearsay also inadmissible under the official written statements exception). Administrative agencies, however, differ in several respects from courts of law. See in this regard *Moran* v. *School Comm. of Littleton*, 317 Mass. 591, 596 (1945).

Under the State Administrative Procedure Act, G. L. c. 30A, "'. . . agencies need not observe the rules of evidence observed by courts . . . . Evidence may be admitted and given probative effect . . . if it is the kind of evidence on which reasonable persons are accustomed to rely in the conduct of serious affairs.' G. L. c. 30A, § 11(2)[, inserted by St. 1954, c. 681, § 1]." *Boylston-Washington, Inc.* v. *Alcoholic Beverages Control Commn.*, 8 Mass. App. Ct. 396, 400 (1979).

Although the standard evidentiary rules do not apply in adjudicatory proceedings before the board,[9] under G. L. c. 175, § 113P, third par., the board's decision must still be supported by "substantial evidence" as set out in G. L. c. 30A, § 14(7)(*e*), as appearing in St. 1973, c. 1114, 3.[10] See *Embers*, 401 Mass. at 528. "The burden is on the appealing party to demonstrate the invalidity of the administrative determination. [Citations omitted.]" *Faith Assembly of God of South Dennis & Hyannis, Inc.* v. *State Building Code Commission*, 11 Mass. App. Ct. 333, 334-335 (1981).

In examining the board's decision in this case, it is clear that the hearing officer did not find the evidence offered by Merisme to be credible. However, "[a]lthough the board was not bound to accept the testimony on behalf of [Merisme] . . . the rejection of this evidence could not create substantial evidence to the contrary." *Cohen* v. *Board of Registration in*

---

[9] 211 Code Mass Regs. § 88.13(6) (1986).

[10] "Substantial evidence is defined [in G. L. c. 30A, § 1(6), inserted by St. 1954, c. 681, § 1] as 'such evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Cohen* v. *Board of Registration in Pharmacy*, 350 Mass. 246, 251 (1966).

27 Mass. App. Ct. 470                                             475

Merisme *v.* Board of Appeals on Motor Vehicle Liability Policies & Bonds.

*Pharmacy*, 350 Mass. 246, 251-252 (1966). See also *Salisbury Water Supply Co.* v. *Department of Pub. Utilities*, 344 Mass. 716, 721 (1962).

This also is not a case where the hearsay evidence relied on was sufficiently corroborated by other evidence, *Western Mass. Bus Lines, Inc.* v. *Department of Pub. Utilities*, 363 Mass. 61, 63 (1973), or a case where the evidence was within an exception to the hearsay rule and therefore competent to support the board's decision, *Dwyer* v. *Commissioner of Ins.*, 375 Mass. 227, 236 (1978), or a case where the hearsay evidence was uncontradicted on the record, *Murphy* v. *Superintendent, Mass. Correctional Inst., Cedar Junction*, 396 Mass. 830, 833-835 (1986). This is a situation where the hearsay statement in the police report was the sole evidence to support the board's decision.

In the recent *Embers* decision, *supra*, the court, in elaborating on the meaning of the *Sinclair* decision, *supra*, made clear that the crucial point is not whether the only evidence relied upon is hearsay inadmissible in a court of law, but, instead, is whether the hearsay carried with it certain "indicia of reliability and probative value." 401 Mass. at 530. If the hearsay testimony contained in the police report is determined to be reliable, then it supports the board's decision.

We cannot say with any degree of comfort that such is the circumstance presented here. In sharp contrast to the present action, the evidence in *Embers* involved the transcript of a related criminal trial. "The transcript . . . on which the ABCC based its findings, although hearsay, was a record of testimony given by [the declarant] in open court, under oath, and subject to cross-examination." *Ibid.* Additionally, certain particulars of that transcript were corroborated by stipulated testimony. *Id.* at 531. Under these circumstances the court held that it was not error for the agency to consider the transcript. The statement in the police report in this case in no way rises to anything approaching the same level of reliability or trustworthiness.[11]

---

[11] "The principal reason for the hearsay rule is that the extrajudicial statements, unlike statements in court, are not immediately tested by cross-

We conclude that the board's upholding of the surcharge merely on the basis of the police accident report was not supported by "substantial evidence" within G. L. c. 175, § 113P, and G. L. c. 30A, § 14, and therefore was a denial of substantial justice to the plaintiff here. *American Employers' Ins. Co.* v. *Commissioner of Ins.*, 335 Mass. 748, 752-753 (1957). As we have determined that the evidence presented by Commerce is insubstantial as matter of law, we have no occasion to reach the question whether Merisme "[h]aving failed to invoke [his] right to call [the declarant] as a witness, . . . cannot [now] be heard to complain of the consequences." *Embers*, 401 Mass. at 531.

The judgment is vacated and a new judgment is to enter remanding the case to the board for a new hearing to be conducted in accordance with this decision.

*So ordered.*

---

examination. Thus, there may be no way to determine whether the extrajudicial statements accurately and fully depict the matters asserted." Liacos, Massachusetts Evidence 262 (5th ed. 1981 & supp. 1985).