Sikora, J.
FACTUAL BACKGROUND
The following facts appear to be undisputed. (I will address any material unresolved facts in the opinion portion of the decision, below.)
On September 25, 1994, at about 4:15 P.M., the appellant Melissa Fullam was driving in the westbound lane of Route 9 in the Town of Ware. She passed a driveway on her right; it contained a garage sale; she decided to return to visit the sale (R.5; 11) (Superior Court Complaint and attached narrative). At a point about 350 feet west of the driveway, she made a left U-turn across the median strip of Route 9, and proceeded back or easterly for about 350 feet to a point even with the garage sale driveway (R.8; 11) (Superior Court Complaint narrative). As she slowed in preparation to turn left across the median strip and into the garage sale driveway, a second vehicle (a pickup truck towing a trailer) driven by Mr. Irving M. Filler struck her car from behind (R.5; 8; 10; 11; 16). Each vehicle incurred substantial damage (R.5; 15; 16).
PROCEDURAL BACKGROUND
The defendant Commerce Insurance Company determined that Melissa Fullam was more than 50% at fault for the accident and proposed to surcharge her premium obligations (R.5; 7). She appealed to the Board of Review (R.8). The Board conducted a hearing of the appeal on August 15, 1995 (R.9). On that occasion it received evidence or information from three sources: (1) materials from the file of the Commerce Insurance Company (R.5); (2) written material and oral testimony by Ms. Fullam (R.5; 8; 10-11; 13-15); and (3) the written statement and drawing of the only eye witness to the accident, a Mr. Gary M. Larzazs (R.16).
The Board’s hearing officer upheld the surcharge (R.9). Melissa Fullam then appealed to the Superior Court in accordance with G.L.c. 175, §113P, third paragraph [incorporating the standards of judicial review of G.L.c. 30A, §14(7)].
OPINION
The findings and reasoning of the Board hearing officer were that the evidence showed that Ms. Fullam had failed to exercise due care “by completing a U-turn and changing from the right lane into the left lane for a left turn into a driveway without yielding to the claimant vehicle which was traveling in the left lane of the road” (R.5). The Board cited 211 CMR §74.04(15) [discussed below] as the controlling standard of fault (id.). It concluded that “ample evidence” supported its finding and conclusion (id.).
On appeal to the Superior Court Ms. Fullam contends that the finding of fault lacks the support of substantial evidence required by G.L.c. 30A, §14(7)(e). For the following reasons, she is correct. I reverse the decision of the Board; order the surcharge to be rescinded and deleted from her insurance premium *80 charge; and order the records of the Board to reflect that action.
1. Substantial Evidence.
Substantial evidence is “such evidence as a reasonable mind might accept as adequate to support a conclusion.” G.L.c. 30A, §1(6). Cohen v. Board of Registration in Pharmacy, 350 Mass. 246, 251 (1966); Merisme v. Board of Appeal on Motor Vehicle Liability Policies & Bonds, 27 Mass.App.Ct. 470, 474 (1989). While the hearing officer was not bound to accept Ms. Fullam’s testimony, his disbelief could not create substantial evidence to the contrary. Cohen, supra, at 251-52; Merisme, supra, at 474-75. The burden rested upon Ms. Fullam, as the appealing party, to demonstrate the invalidity of the administrative determination. Merisme at 474; Faith Assembly of God of South Dennis & Hyannis, Inc. v. State Building Code Commission, 11 Mass.App.Ct. 333, 334-35 (1981). The reviewing court may not substitute its choice between two fairly conflicting views of the evidence even though it might justifiably have found differently from the agency if it had heard the case de novo. Embers of Salisbury, Inc. V. ABCC, 401 Mass. 526, 529 (1988) (cases collected); and Number Three Lounge, Inc. V. ABCC, 7 Mass.App.Ct. 301, 309 (1979) (cases collected) .
In this instance no evidence, let alone “ample” or “substantial” evidence, supports the Board finding that Melissa Fullam carelessly executed a U-turn and/or then carelessly shifted from the right to the left lane without yielding to Mr. Filler’s vehicle as it approached from the rear. I examine each of the three sources of evidence before the hearing officer.
(a) Ms. Fullam’s testimony was that she executed the U-turn while the Filler truck and camper were at some distance away in the eastbound side of Route 9; that she U-turned immediately into the left lane of the eastbound side of the highway because she knew that she could soon be turning left across the highway into the garage sale driveway; that she traveled the 300’ to 350’ distance to the point of that turn with her left directional on; that she slowed to stop as she approached that point; and that the Filler vehicle collided from the rear as it veered over the double center line to her left in an effort to avoid contact (Superior Court narrative complaint summarizing Board testimony) (R. 10; 11; Fullam narrative and diagram submitted at Board hearing).
(b) The written statement of the eye witness Gary Larzazs, received by the hearing officer, but unmentioned in the Board decision, recited that from the garage sale driveway he saw the Fullam car slowing to stop in the left lane; saw the Filler vehicle close in from behind also in the left lane; saw the Filler vehicle swerve to the left and heard its brakes squeal; and saw and heard the crash (R.16).
(c) Finally, and perhaps most telling, the written statements of the driver Filler [submitted into evidence at the Board hearing from the Commerce Insurance Company file, but not included in the Board’s record submitted for judicial review under c. 30A, §14(7)] make no reference to any change of lanes by Ms. Fullam. In both the Registry accident report form and the Commerce Insurance Company accident report form (both executed within several days of the accident), Mr. Filler wrote simply that his vehicle was traveling at about 40 m.p.h. behind Ms. Fullam and that the Fullam car struck his pickup truck at the right front wheel so as to break off that wheel and the steering bar. [While the Board referred broadly to “information” received from “the insurance company’s file” in the course of its adverse decision (R.5), it did not include the referenced material in the record for judicial review. That omission encompassed the two cited accident reports and their exculpatory value for the surcharged driver. The court thanks counsel for the insurer who provided them upon request in the course of oral argument in open court. Those materials, of course, contribute to a fuller, more accurate record for judicial review and decision. Pursuant to G.L.c. 30A, §14(4), I add them to the appellate record.]
In sum, no evidence supports a finding that Ms. Fullam carelessly executed either a U-turn or a change of lanes so as to cause, or contribute to the cause, of the accident in this case.
2. Misuse of the Standard-of-Fault Presumption.
The Board’s misapplication of the cited standard-of-fault presumption constitutes an independent ground for reversal. One might characterize it as either (a) a failure of substantial evidence under G.L.c. 30A, §14(7) (e), or (b) an error of law under §14(7)(c).
The Board concluded that its decision was “made in accordance with 211 CMR §74.04(15)” (R.5). That provision, known as “Standard of Fault Code 15" reads as follows (emphasis supplied):
An operator of a vehicle subject to the Safe Driver Insurance Plan, while making a legal or illegal U-turn across the path of travel of a vehicle moving in the opposite direction or while making a left turn across the path of travel of a vehicle moving in the opposite direction and [which] is in collision with such vehicle, shall be presumed to be at fault in excess of 50%.
This standard-of-fault presumption has no proper application to the evidence of the present case. No evidence supported any proximate causal connection between the U-turn and the collision 350’ later. And no evidence indicated that the Fullam car was ever making a left turn “across the path of [the Filler vehicle] moving in the opposite direction.” The Board’s decision cites in blanket fashion a statute and seven other regulations unrelated to the evidence of the present case (R.2-4).
*81 The Board should bear in mind that its system of fault standards and presumptions does not operate in an evidentiary vacuum. They operate upon the evidence, not in place of the evidence. To render them applicable, a hearing officer must first identify the evidence of the circumstances prerequisite for the presumption; find the circumstances to be established by that evidence; and then apply the presumption of majority fault which the driver may attempt to rebut. The presumptions do not function as a substitute for the evidence and reasoning required in each case. They do not operate as a system of automatic or self-executing findings against drivers.
3. Completeness of the Record.
If the Board relies for its decision upon any documentary materials from the file of the surcharging insurer or from any other source, it should include them in the administrative record filed in the Superior Court under G.L.c. 175, §113P and G.L.c. 30A, §14(4) so as to enable fully informed judicial review. (It remains an option of the appealing driver and of the Board whether to request an official transcription of the recording of the Board hearing.)
CONCLUSION
For the foregoing reasons, I reverse the decision of the Board of Appeal dated September 7,1995, upholding the surcharge against Mellissa Fullam; order the rescission and deletion of the surcharge from any insurance premium charge to her; and order the records of the Board to reflect the rescission and deletion.