Agnes, A.J.
I. BACKGROUND
A. Introduction. The plaintiff seeks relief from a decision of the district court affirming a decision by the Police Chief of Marblehead revoking his license to carry a firearm under G.L.c. 140, §131 on grounds that he was no longer a “suitable person.” The parties assumed that this case involved an appeal from the district court under G.L.c. 231, §97 and not an original proceeding in the nature of certiorari. As a result, the plaintiff did not arrange for the entire record of the proceedings before the district court to be transmitted to the Superior Court as customarily done in certiorari cases. It therefore is necessary to stay the proceedings until the record is compiled and transmitted to this court. However, because the parties expressed uncertainty about the scope of judicial review and due to recent changes in the statutes regulating firearms licenses, a review to clarify the role of the licensing authority, the district court and the superior court in cases under G.L.c. 140, §131 is in order.
B. Prior Proceedings. The record before the court indicates that on December 19, 1997, the plaintiff was arraigned before the Salem District Court and charged with Assault and Battery By Means of a Dangerous Weapon and Accessory Before the Fact based on an incident that allegedly occurred in Salem on December 18, 1997. Commonwealth v. Stavis, No. 9736CR4069 (Salem District Court). The District Court docket indicates that the charges were dismissed on April 7, 1998 due to the Commonwealth’s failure to prosecute. Thereafter, on April 16, 1998, the plaintiff wrote to the Police Chief of Marblehead and explained that he had been arrested in connection with an incident at Paul’s Lounge in Salem and that his firearm license was confiscated by the Salem Police and forwarded to the Marblehead Police department. In his letter the plaintiff stated that “I am requesting the return of my permit, as there was no involvement of firearms on my part, I was not carrying a firearm at the time of my arrest, and the case was dismissed.” He also stated that “I am almost a 30-year resident of the Town. In that time, I’ve never had a ticket in town, or been in trouble elsewhere. I’m not proud of my association with this event, and am certain this will not happen again.” Letter of Robert E. Stavis (April 16, 1998).
On May 5, 1998, Chief Palmer responded to the plaintiffs letter by informing him in writing that he had revoked his license. The Police Chiefs letter states, in relevant part, as follows:
This letter is to notify you that I have revoked your license to carry firearms as a result of actions taken by you on Thursday, 12/19/97 concerning your involvement at Paul’s Lounge where an individual was beaten, guns were shown, and a gun was allegedly pointed at the victim’s head by one of your companions in a threatening manner. In addition, prior to your going to Paul’s Lounge with your companions, you had ample opportunity to avoid going to the Lounge where, based on the Salem Police Department’s report, it was clear you and your companions intended to assault the victim.
Based on the information I have received from the Salem Police Department, I have determined that you are not a suitable person to carry firearms.
Thereafter, the plaintiff filed a petition for review of the Police Chiefs decision with the District Court. See G.L.c. 140, §131. An evidentiary hearing was conducted by the District Court (Cornetta, J.) on October 16, 1998. There is no record before me of the evidence presented to the District Court. What is before me are the Findings and Rulings issued by the District Court. In pertinent part, the court’s decision states that “this petitioner was in the company of 3 individuals when Smith was beaten [and] as a result of the same and petitioner’s failure to notify police of the altercation as it occurred, the police chief would be justified in determining this petitioner is not a suitable person to carry a concealed weapon in the Commonwealth.” On this basis, the court affirmed the decision of Chief Palmer. The plaintiff then filed what he termed an appeal to the Superior Court under G.L.c. 231, §97.
II. COURT’S REASONING A. Nature of Administrative and Judicial . Review in Firearm License Cases
(1) Administrative level — Chief of Police or other licensing authority. Prior to the adoption of the 1998 amendments to the firearm licensing law contained in G.L.c. 140, a person seeking a license to carry a firearm was required to submit to a background check to determine whether he or she had a criminal record or a history of “mental, psychiatric or psychological illness.” G.L.c. 140, §131, para. 1 as appearing in St. 1986, c. 481, §2. After gathering this information, if the individual was not excluded based his or her status as an alien or a conviction for a felony or the unlawful use, possession or sale of narcotic or harmful drugs, the licensing authority was authorized to grant a license to carry a firearm “if it appears that the applicant is a suitable person to be so licensed, and that the applicant has good reason to fear injury to his person or property, or for any other proper purpose, including the carrying of firearms for use in target practice only.” G.L.c. 140, §131, para. 2, as appearing in St. 1986, c. 481, §2. Once issued, such a license was “revocable for cause at the will of the authority issuing the same.” G.L.c. 140, §131, para. 9, as appearing in St. 1986, c. 481, §2. In 1994, the legislature added a fourth exclusion that applies to persons who *5 were at the time subject to a restraining order. St. 1994, c. 24, §3.
In 1998, the legislature made significant changes to the Massachusetts laws relating to firearms. Under the current law, there are two categories of licenses to carry firearms. A Class A license entitles the holder,
to purchase, rent, lease, borrow, possess and carry: (i) firearms, including large capacity firearms, and feeding devices and ammunition therefor for all lawful purposes, subject to such restrictions relative to the possession, use or carrying of firearms as the licensing authority deems proper; and (ii) rifles and shotguns, including large capacity weapons, and feeding devices and ammunition therefor, provided, however, that the licensing authority may impose such restrictions relative to the possession, use or carrying of large capacity rifles and shotguns as it deems proper.
G.L.c. 140, §131(a), as appearing in St. 1998, c. 180, §41.[2]
A Class B license entitles the holder,
to purchase, rent, lease, borrow, possess and carry: (i) non-large capacity firearms and feeding devices and ammunition therefor, for all lawful purposes subject to such restrictions relative to the possession use or carrying of such firearms as the licensing authority deems proper; provided, however, that a Class B license shall not entitle the holder thereof to carry or possess a loaded firearm in a concealed manner in any public way or place; and provided further that a Class B license shall not entitle the holder to possess a large capacity firearm, except under a Class A club license issued under this section or the direct supervision of a holder of a valid Class A license at an incorporated shooting club or licensed shooting range; and (ii) rifles and shotguns, including large capacity rifles and shotguns, and feeding devices and ammunition therefor, for all lawful purposes provided, however, that the licensing authority may impose such restrictions relative to the possession, use or carrying of large capacity rifles and shotguns as it deems proper.
G.L.c. 140, §131(b), as appearing in St. 1998, c. 180, §41. Passing over some of the finer points that are contained in the new law, one of the principal reasons for the distinction between the classes of licenses to carry firearms is to establish a public policy that requires an individual to obtain special permission from the licensing authority (in the form of a Class A license) in order to carry a loaded handgun in a concealed manner in public.
In terms of the requirements for obtaining a Class A or a Class B license, the new law enlarges upon and adds to the exclusions that were contained in the prior law and that render an applicant ineligible to obtain a license to carry. For example, a person is ineligible to obtain a license tq carry a firearm if he or she (1) has been convicted or adjudicated as a youthful offender in any state or federal jurisdiction for not only a felony but also for any misdemeanor punishable by imprisonment for more than two years, as well as other crimes of violence as defined in G.L.c. 140, §121,[3] and for violations of the law relating to weapons, ammunition and controlled substances, (2) has been hospitalized for or treated for certain mental health or substance abuse problems (unless a physician supplies an affidavit indicating that the applicant is no longer disabled by the illness or condition), (3) is at the time of the application léss than 21 years of age, (4) is an alien,[4] or (5) is subject to a restraining order under G.L.c. 209A in Massachusetts or elsewhere, or (6) is subject to an outstanding arrest warrant in any jurisdiction. G.L.c. 140, §131(d), as appearing in St. 1998, c. 358, §6. If an individual does not fall within one of the statutory exclusions, the licensing authority may grant a license “if it appears that the applicant is a suitable person to be issued such license, and that the applicant has good reason to fear injury to his person or property, or for any other reason, including the carrying of firearms for use in sport or target practice only, subject to such restrictions express or authorized under this section.” G.L.c. 140, §131(d), as appearing in St. 1998, c. 358, §6.
The standard for issuing licenses to carry under §131 must be interpreted in accordance with the intent of the legislature. Legislative intent is determined principally by considering the ordinary meaning and any settled usage of the words contained in the statute, as well as by a consideration of the problem sought to be addressed or the goal to be advanced by the law. See Board of Education v. Assessor of Worcester, 368 Mass. 511, 513-14 (1975) (quotations and citations omitted). With reference to §131, what the Appeals Court has stated about an earlier version of the law is equally applicable to the current law.
The goal of firearms legislation in Massachusetts is to limit access to deadly weapons by irresponsible persons. A wide range of methods has been adopted by the Legislature to accomplish this goal, including the requirement of licenses for the sale or possession of firearms and ammunition, and the imposition of serious penalties for infractions of the firearms control laws. From a realization that prevention of harm is often preferable to meting out punishment after an unfortunate event, G.L.c. 140, §131 was enacted as a first-line measure in the regulatory scheme. It has been said about § 131 that it was intended “to have local licensing authorities employ every conceivable means of preventing deadly weapons in the form of firearms [from] coming into the hands of evil doers.”
Ruggiero v. Police Commissioner of Boston, 18 Mass.App.Ct. 256, 258-59 (1984).[5]
*6 In Ruggiero, the Appeals Court interpreted the pre1998 version of § 131 to require the licensing authority to engage in a two-step inquiry. First, it must determine whether the applicant is a “suitable person.” Second, it must determine whether the applicant has demonstrated a “proper purpose” for a license to carry. Id. at 259. The chief of police or other licensing authority is required to undertake the same two-stage inquiry under the current law.[6] Because an individual has no federal or state constitutional or statutory right to possess or carry a firearm, Commonwealth v. Davis, 369 Mass. 886 (1976), the burden of proof is on the applicant. See Chief of Police of Shelburne v. Moyer, 16 Mass.App.Ct. 543, 546 (1983). And “[i]n performing its task, the licensing authority is given considerable latitude.” Ruggiero, 18 Mass.App.Ct. at 259. This means that the chief of police may take into consideration information from whatever source that is relevant to an applicant’s fitness to hold a license to carry a firearm provided that the applicant is made aware of it, given an opportunity to respond to it and, if the information forms part of the basis for the decision to deny the applicant a license, that the licensing authority explain its reasoning in writing. G.L.c. 140, §131(d) (“The licensing authority shall, within 40 days from the date of application, either approve the application and issue the license or deny the application and notify the applicant of the reason for such denial in writing”).
Because the statute does not further define the “suitable person” standard, the chief of police or the licensing authority has the authority to require an otherwise eligible applicant for a license to carry a firearm to comply with any other requirements that are reasonably related to the goal of keeping firearms out of the hands of irresponsible people. Thus, in MacNutt v. Police Commissioner of Boston, 30 Mass.App.Ct. 632, 635 (1991), the court concluded that the Police Commissioner of Boston had authority under § 131 to require applicants to pass “a test focusing on the safe handling and proficient firing of a firearm.”[7]
Once the chief of police or licensing authority has issued a license to carry a firearm under G.L.c. 140, §131, the law provides that "it shall be suspended or revoked . . . upon the occurrence of any event that would have disqualified the holder from being issued such license or from having such license renewed.” G.L.c. 140, §131(f). In addition, the law provides that the licensing authority has discretion to revoke or suspend such a license “if it appears that the holder is no longer a suitable person to possess such license.” G.L.c. 140, §131(f). In either case, the decision by the licensing authority “shall be in writing and shall state the reasons therefor.” G.L.c. 140, § 131(f).
(2) Judicial Review — District Court level. In Godfrey v. Chief of Police of Wellesley, 35 Mass.App.Ct. 42 (1993), the Appeals Court examined and clarified the procedure for obtaining judicial review in these cases and described the nature of that review at both the district court and superior court levels. In Godfrey, the Appeals Court explained that a party aggrieved by the decision of a police chief revoking or suspending a firearms license has a right to an evidentiary hearing in the District Court. Although the 1986 version of §131 considered by the Appeals Court in Godfrey required the district court to hear “all of the facts,”[8] the Appeals Court pointed out that the hearing was not a de novo proceeding. The court referred to the statutory language in §131 that described the relief available to the aggrieved party as a “petition to obtain judicial review,” and noted that “(i]n the strict sense, ‘judicial review’ means a 're-examination of a proceeding, already concluded, for the purpose of preventing a result which appears not to be based upon the exercise of an unbiased and reasonable judgment.’ ” Id. at 44, quoting Commissioners of Civil Service v. Municipal Court of the City of Boston, 369 Mass. 84, 87 (1975). Under this standard, the district court is not permitted to substitute its opinion about whether a license to carry should or should not have been issued, suspended or revoked for that of the chief of police or licensing authority. Godfrey, 35 Mass.App.Ct. at 45.
As for the nature of evidentiary hearing before the district court, in Chief of Police of Shelburne v. Moyer, 16 Mass.App.Ct. 543, 547 (1983), the Appeals Court concluded that the district court was not required to observe all the formalities of a trial. “The hearsay rule should not be applied to evidence proffered by a chief of police in support of the reasonableness of his denial. The test should be one of relevance.” Furthermore, the applicant or individual whose license was suspended or revoked has the burden of producing “substantial evidence” that establishes that the refusal to issue the license or the suspension or revocation of a license was “arbitrary, capricious or an abuse of discretion.” Chief of Police of Shelburne v. Moyer, supra, 16 Mass.App.Ct. at 546. "The weight and credibility accorded such evidence is, of course, for the trial judge in deciding the question whether a chief of police had any reasonable ground for refusing to grant the license . . .” Id. at 547. However, the applicant fails to meet his or her burden by simply demonstrating that the licensing authority weighed conflicting evidence and reached a result that the district court would not reach if it were acting de novo. Compare Sullivan v. Municipal Court, 322 Mass. 566, 572-73 (1948).
In Moyer, the Appeals Court refers to G.L.c. 30A, §14(7)(g), to describe the nature of judicial review available in the district court. In one respect, the nature of the judicial review available in the district court under G.L.c. 140, §131 is clearly broader than the review available under G.L.c. 30A because the district court is authorized to re-examine the facts found by the licensing authority and find facts. Contrast Quintal v. Commissioner of Department of Employment and Training, 418 Mass. 855, 858 (1994) (in *7 cases brought to court under G.L.c. 30A. the administrative agency is the sole finder of facts). However, in other respects there is no reason to suppose that the scope of judicial review in the district court under § 131 should be any less than the judicial review available under G.L.c. 30A, §14(7). The full text of G.L.c. 30A, §14(7) provides as follows:
The court may affirm the decision of the agency, or remand the matter for further proceedings before the agency: or the court may set aside or modify the decision, or compel any action unlawfully withheld or unreasonably delayed, if it determines that the substantial rights of any party may have been prejudiced because the agency decision is—
(a) In violation of constitutional provisions; or
(b) In excess of the statutory authority or jurisdiction of the agency; or
(c) Based upon an error of law; or
(d) Made upon unlawful procedure; or
(e) Unsupported by substantial evidence; or
(f) Unwarranted by facts found by the court on the record as submitted or as amplified under paragraph (6) of this section, in those instances where the court is constitutionally required to make independent findings of fact; or
(g) Arbitrary or capricious, an abuse of discretion, or otherwise not in accordance with law.
G.L.c. 30A, §14(7). Based on the terms of G.L.c. 140, § 131 and its purposes as exemplified by the decisional law interpreting and applying it, district court review of a decision to deny, suspend or revoke a firearms license encompasses that provided for in G.L.c. 30A, §14(7)(a), (b), (c), (d) and (g). See Newbury Junior College v. Town of Brookline, 19 Mass.App.Ct. 197, 202 n. 7 (1985) (discussing distinction between judicial review of a licensing decision under the “arbitrary and capricious” test as opposed to the “substantial evidence” test).
Thus, when a person files a petition in the district court for review of the decision of a licensing authority denying or limiting an application for a firearms license under G.L.c. 140, §131, the court has the responsibility to review both the legal and the factual basis for the action taken by the licensing authority. While substantial deference should be given to the judgment made by the licensing authority, see, e.g., O'Malley v. Chief of Police of Stoughton, 35 Mass.App.Ct. 49, 51-52 (1993) (district court judge erred in overturning decision by local police chief who had refused to issue a license for machine guns to a person who wished to possess them for “personal enjoyment and possible future profit” by substituting the court’s judgment as to suitability in place of the licensing authority’s view); Roy v. Dufort, 1999 WL 1335160, 1999 Mass. Super. LEXIS 511 (Dec. 8, 1999) (Hillman, J.) (police chief is not confined to the specific statutory disqualifications in determining whether an applicant is a “suitable person,” and is not bound by any judgments about the applicant’s suitability made by his predecessors in office), the district court should not defer to the licensing authority with regard to questions of law. This view finds support in DeLuca v. Chief of Police of Newton, 415 Mass. 155 (1993), in which the Supreme Judicial Court explained that an applicant for a firearms license who had been turned down by the local police chief because of his involvement in a shooting while employed as a Special Police Officer even though he had been later pardoned by the governor would have been entitled to prevail in his petition before the district court if his case was covered by an amendment to G.L.c. 127, §152 which made police reports relating to cases in which the offender was pardoned inadmissible for any purpose in connection with licenses. Accord, Dennison v. Whearty, 1998 Mass. Super. (No. 96-542) (Connon, J.) (local police chief impermissibly denied applicant a firearms license solely on account of his membership in the Hell’s Angels organization). See also Merisme v. Board of Appeals, 27 Mass.App.Ct. 470 (1989) (second-level hearsay such as a statement attributed to an alleged witness that is contained in a police report that is not corroborated by any other evidence and does not include circumstantial guarantees of trustworthiness does not meet the “substantial evidence” test under G.L.c. 30A, §14(7)(e)), discussed in In the Matter of Segal, 430 Mass. 359 (1999).
(3) Judicial Review — Superior Court level. In the Godfrey case, the Appeals Court also clarified the nature of judicial review that is available before the Superior Court in these cases. In Godfrey, the Appeals Court held that a party aggrieved by the action of the district court in such cases either affirming or reversing the action taken by the chief of police or licensing authority does not have the right to appeal for a trial de novo under G.L.c. 231, §97, but instead is limited to a civil action in the nature of a writ of certiorari under G.L.c. 249, §4. Godfrey, 35 Mass.App.Ct. at 45-46. In such cases, “(tjhe reviewing judge is limited to what is contained in the record of proceedings below, and it is settled that ‘the standard of review in an action in the nature of certiorari is to correct substantial errors of law apparent on the record adversely affecting material rights.’ ” Police Commissioner of Boston v. Robinson, 47 Mass.App.Ct. 767, 770 (1999). See also Mayor of Medford v. Judge of First District Court of Middlesex, 249 Mass. 465 (1924) (Rugg, C.J.). In a proceeding before the Superior Court, the scope of this review is broad enough to include an examination of whether there was a reasonable basis for the decision made by the licensing authority to deny, suspend or revoke a license or by the judge of the District Court to order the issuance or restoration of a license.
*8 B. Application of Legal Principles
In the present case, the record contains the letter from the Marblehead Police Chief to the plaintiff dated May 5, 1998 which refers to the alleged criminal episode at Paul’s Lounge on December 19, 1997 and which adds that “[biased on the information received from the Salem Police Department I have determined that you are not a suitable person to carry firearms.” The nature of that information is not disclosed.[9] The record also contains the “Findings and Rulings” by the district court which make reference to the police chiefs finding that the plaintiff “was involved” in the incident at Paul’s Lounge on December 17, 1997. In his answer to an interrogatory filed by the plaintiff, Chief Palmer states that ”[m]y reasons for revoking Robert E. Stavis’ License to Carry Firearms were clearly stated in my letter to him dated 5/5/98.” After taking testimony and considering exhibits, the District Court made the following finding and ruling: “that the petitioner was in the company of 3 other individuals when Smith was beaten, as a result of the same and petitioner’s failure to notify police of altercation as it occurred, the police chief would be justified in determining this petitioner is not a suitable person to carry a concealed weapon ...”
If the only evidence upon which the police chief relied was evidence that the plaintiff was present when a crime took place at Paul's Lounge, even if it involved the illegal use of a firearm and was committed by his companions or friends, and that he failed to notify the police, grounds would not exist for the suspension of his license under G.L.c. 140, §131. “It is axiomatic that mere presence at the scene of the crime and the failure to take affirmative steps to prevent it do not render a person liable as a participant ...” Commonwealth v. Avery, 44 Mass.App.Ct. 781, 782-83 (1998) (citations omitted). While it is true that a decision to suspend or revoke a firearms license under G.L.c. 140, §131 on grounds that the holder is no longer a “suitable person” can be based on considerations beyond simply whether the licensee has committed a crime or the explicit disqualifying factors set forth in the statute, and that the licensing authority is not governed by the proof beyond a reasonable doubt standard applicable in criminal cases, a determination based solely on the fact that one’s companions had committed a crime or that one had failed to report a crime would run counter to the deeply ingrained tradition against guilt by association. See Commonwealth v. Chinn, 6 Mass.App.Ct. 714, 717 (1978), and cases cited. This does not mean that the fact that a person habitually associates with persons who violate the law or otherwise engage in inappropriate behavior, including verbal behavior, cannot be taken into consideration in determining whether the person is suitable to hold a firearms license.
Furthermore, it should be noted that the record before me indicates that the criminal charges against the plaintiff arising out of the incident on December 19, 1997 were dismissed for want of prosecution. Here again, the mere fact that criminal charges against a person who holds a firearms license are dismissed does not preclude an independent determination by the licensing authority that the person is not suitable to hold the license. However, the dismissal of the charges serves to render impermissible any inference that might be drawn against the holder of license based on his arrest. Compare Commonwealth v. Maggio, 414 Mass. 193 (1993) (mere fact of an indictment is not sufficient basis to support revocation of probation).
The problem with the record in this case is that the parties assumed that the plaintiff had the right to appeal under G.L.c. 231, §97 from an adverse decision by the district court. As a result, the entire record that was before the district court, including a transcript or other record of the testimony, was not forwarded to the Superior Court as required by G.L.c. 249, §4. Because it is entirely possible that there is additional evidence that was presented to the District Court beyond what appears in the record that is before me, the appropriate course is for this court to stay these proceedings for thirty days and order that the record of the proceedings before the Lynn District Court be transmitted to the Superior Court in accordance with G.L.c. 249, §4. See Police Commissioner of Boston v. Robinson, 47 Mass.App.Ct 767 (1999).
III. ORDER
For the above reasons, the plaintiff does not have a right to an appeal to the Superior Court from the District Court under G.L.c. 231, §97 in a firearms license case under G.L.c. 140, §131. The plaintiffs complaint is treated as one in the nature of certiorari under G.L.c. 249, §4. In order to exercise this court’s limited authority to correct any substantial errors of law that may have occurred, the entire record that was before the District Court must be transmitted to the Superior Court. As a result, further proceedings in this case shall be stayed for a period of thirty days, and the plaintiff is ordered to make all necessary arrangements for the transmission of the complete record of the proceedings before the Lynn District Court in this case to the Clerk of the Superior Court sitting in Salem in and for the county of Essex.

Definitions of terms such as “firearm," “weapon,” “large capacity feeding device,” large capacity weapon," “rifle,” shotgun," and “Licensing authority” are contained in G.L.c. 140, §121.

There is no provision is G.L.c. 140, §131 or §121 that provides for the removal of this disability after any specified number of years. Thus, it appears that a conviction for a felony or many different types of misdemeanors represents a *9 lifetime bar to eligibility to obtain a license to carry a firearm. Compare Rzeznik v. Chief of Police of Southampton. 374 Mass. 475 (1978) (applicant for a firearm license who has been convicted of a felony and is barred from obtaining a license to carry a firearm is not denied procedural due process).

Non-residents and aliens may apply to the Colonel of the Massachusetts State Police for a temporary license to carry or permit to own or possess a firearm. See G.L.c. 140, §§131F & 131H.

The new law also establishes the Gun Control Advisory Board which is charged with giving advice to the Executive Office of Public Safety about the implementation of G.L.c. 140, §§121-131P. G.L.c. 140, §131 1/2.

The phrase “proper purpose” appears in the pre-1998 version of §131. After indicating that the applicant must be found to be a "suitable person" the earlier version of §131 requires the licensing authority to determine “that the applicant has good reason to fear for injury to his or her person or property, or for any other proper purpose, including the carrying of firearms for use in target practice only." G.L.c. 140, §131, as appearing in St. 1986. As a result of the 1998 amendments, the words “proper purpose” have been struck out and in their place the legislature has substituted the following: “that the applicant has good reason to fear injury to his person or property, or for any other reason, including the carrying of firearms for use in sport or target practice only . . G.L.c. 140, §131, as appearing in St. 1998, c. Despite the change in phraseology from “for any other proper purpose” to “for any other reason,” the analysis by the Appeals Court in Ruggiero remains valid and the chief of police or licensing authority is authorized to require an applicant who is found to be a “suitable person” to nonetheless also demonstrate a good reason or a proper purpose for a license to carry a firearm and to issue it subject to such restriction as it deems proper. See id. at 260. See also G.L.c. 140, §131(a) & (b) (providing that with respect to both Class A and Class B licenses, the licensing authority may impose such restrictions regarding possession or use of firearms “as it deems proper").

In MacNut, the court reasoned that the licensing authority had the incidental power to impose a testing requirement on all applicants because the statutory grant of authority was “without guidelines." Under the 1998 amendments, most applicants for a license to carry who were not already licensed on June 1, 1998 are now required to submit a “basic firearms safety certificate” to the licensing authority evidencing that they completed a course of instruction that satisfies guidelines promulgated by the colonel of the Massachusetts State Police. See G.L.c. 140, §131P. Thus, at least insofar as testing for firearm safety is concerned, state law and regulations may preempt local guidelines.

following the decision in Godfrey, the legislature amended §131 several times. In 1998, the legislature struck out the language “after having heard all of the facts,” and substituted in its place the phrase “after a hearing.” St. 1998, c. 180, §41. This amendment serves to reinforce the view expressed in Godfrey that the proceedings in the district court were designed to be narrow in scope.

The letter to the plaintiff from Chief Palmer states in part that “based on the Salem Police Department’s report, it was clear you and your companions intended to assault the victim.” Credible evidence to this effect could supply the basis for a determination that the plaintiff is not a “suitable person” under G.L.c. 140, §131. However, the record before the court does not include the Salem Police report. It is not clear whether this report was in evidence before the district court. Thus, it is not possible to evaluate the determination made by Chief Palmer. Compare Merisme v. Board of Appeals, 27 Mass.App.Ct. 470 (1989) (second-level hearsay contained in a police report does not meet the substantial evidence test under G.L.c. 30A, §14(7)(e)).