This case presents the question whether a hearing examiner of the Sex Offender Registry Board (SORB) properly relied on hearsay evidence of an alleged sex offense as an important basis for reclassifying the plaintiff as a level three sex offender. The plaintiff urges that the evidence of the alleged offense was second- and third-level hearsay, and unreliable as a matter of law. We disagree, and perceiving no other error, we affirm SORB's classification decision.
Background. 1. Evidence before SORB. The plaintiff was forty-five years old at the time of the hearing before the SORB hearing examiner, but the evidence against him spans a period of many years. The evidence principally relied on by the hearing examiner was of two types: (1) evidence of three separate sexual or indecent assaults on children, and (2) evidence of multiple instances of other kinds of criminal behavior or violence against women. The instances of behavior span a time period from 1986, when the plaintiff was fifteen, through 2015.
The first sexual assault occurred in September 1986. The victim, a four year old girl, told an investigator that the plaintiff, who was then fifteen years old, approached her on the street and brought her into the hallway of a house. The victim reported that the plaintiff "pulled up [her] shirt and pulled down [her] pants and stuck his finger in [her] bum," and that the plaintiff "licked [her] bum" to "get the dirt off." The victim also indicated that the plaintiff had taken her to the same location "lots of times" before. The plaintiff was adjudicated delinquent on one count of indecent assault.
The second sexual assault occurred four years later in June 1990. The victim, this time a ten year old girl, informed police that the plaintiff had approached her on the street and asked for help carrying a box, and then led her into a nearby basement. Once inside the plaintiff ordered the victim to take her clothes off and lie down on a nearby mattress. When the victim refused and began crying, the plaintiff placed his hand over her mouth and told her she could not go home unless she stopped crying. The plaintiff eventually let the victim go and told her not to tell anyone. The plaintiff was found guilty of indecent assault and battery on a child under fourteen and sentenced to two years in prison.
The third sexual assault is at the heart of this appeal, as it was shown only by hearsay evidence. In 2004, the plaintiff allegedly assaulted a five year old girl while alone with her in a room in the plaintiff's home. The plaintiff knew the victim well; the plaintiff and his then wife were friendly with the victim's mother.
This third alleged assault was not criminally prosecuted. The evidence of the assault presented at the hearing came entirely from documents, the most important of which for present purposes is a police report dated February 14, 2005. The police report stated in pertinent part that the investigating officer interviewed the victim's mother in January 2005. The mother stated that she and the victim had become very friendly with the plaintiff and his then wife in the spring of 2004. The plaintiff and the victim developed a relationship; the plaintiff babysat the victim, sometimes by himself, and they would take walks together outside. The plaintiff would call the victim on the victim's personal cell phone and talk for extended periods.
One day in approximately October of 2004, the plaintiff and the victim watched a movie together in a bedroom of the plaintiff's apartment, behind a closed door, while the mother and the plaintiff's wife watched a different movie in the living room. The victim and her mother subsequently left the plaintiff's apartment to go home, and when the victim got in the car with her mother, the victim told her mother that "[the plaintiff] licked my bum." The mother asked the victim whether she was telling the truth, and the victim did not answer. During the police interview the mother reported that on the day of the incident the victim had come out of the bedroom several times and whispered something to her, but the mother had not understood what was whispered. After the victim came out of the bedroom the plaintiff would follow her out, appearing nervous, and ask what the victim had said.
Subsequent interviews of the mother were conducted by the Department of Social Services (DSS),[2] and the notes of these interviews were also before the hearing examiner. In those DSS interviews the mother stated that she did not believe what the victim had told her in the car, and that the victim had made up stories in the past. The DSS investigator also asked the plaintiff about the allegation; the plaintiff denied any such contact with the victim. DSS also interviewed the victim, but there is no record of the victim ever confirming or denying the allegations.
2. Criminal history. The hearing examiner also received evidence of the plaintiff's criminal record, which included several instances of violence against women. In particular, the plaintiff had had five restraining orders issued against him since 2009, involving three different women.[3] Two of those orders were issued in favor of the plaintiff's ex-wife, who claimed that the plaintiff was physically and emotionally abusive for most of their marriage, including demeaning her intelligence, kicking her, throwing objects at her, and attacking her with a hammer. Another restraining order was issued after a different ex-girlfriend alleged that the plaintiff had thrown objects at her and threatened to "bash" her head in.
3. Procedural history. The plaintiff was initially classified as a level one sex offender in April 2002. In 2005, after the third sexual assault incident, SORB sought to reclassify. In 2006, the plaintiff stipulated to an interim level three classification, on the express condition that he could seek to reopen the classification hearing once the ongoing criminal investigation was complete. The plaintiff did not, however, seek to reopen his classification for approximately ten years -- until 2016. At the 2016 hearing, the plaintiff appeared through counsel, but he did not attend.
The hearing examiner issued a thoughtful twenty-four-page decision which concluded that the plaintiff "poses high risk of sexual reoffense" and must register as a level three sex offender. Relevant here, the examiner relied extensively on the 2004 alleged sexual assault throughout her decision. The examiner specifically found the 2004 allegations to be "reliable," noting in particular the "highly specific similarity" between the 2004 allegation and the plaintiff's prior, 1986 assault of a four year old girl. A Superior Court judge rejected the plaintiff's challenge to the classification, finding the hearing examiner's decision supported by substantial evidence. The plaintiff appeals.
Discussion. A sex offender may seek judicial review of a SORB classification pursuant to G. L. c. 30A, § 14. On review the court examines the administrative record for substantial evidence to support the hearing examiner's classification, and may disturb the decision only where it is unsupported, arbitrary or capricious, an abuse of discretion, or not in accordance with the law. See G. L. c. 30A § 14 (7) ; Doe, Sex Offender Registry Bd. No. 380316 v. Sex Offender Registry Bd., 473 Mass. 297, 300 (2015) (Doe 380316 ). "We 'give due weight to the experience, technical competence, and specialized knowledge of the agency, as well as to the discretionary authority conferred upon it.' " Doe, Sex Offender Registry Bd. No. 356011 v. Sex Offender Registry Bd., 88 Mass. App. Ct. 73, 76 (2015), quoting Doe, Sex Offender Registry Bd. No. 10216 v. Sex Offender Registry Bd., 447 Mass. 779, 787 (2006).
The plaintiff's principal argument is that the hearing examiner abused her discretion in relying on the hearsay evidence of the 2004 incident. The plaintiff asserts that those allegations were investigated by the Department of Children and Families and the Randolph Police Department and "deemed unfounded." The plaintiff points out that absent the 2004 incident, the only sex offenses on the plaintiff's record were roughly thirty years old at the time of the hearing.
It is settled that SORB's proceedings are not governed by the formal rules of evidence. Instead, SORB may "receive and consider evidence of a kind 'on which reasonable people are accustomed to rely in the conduct of serious affairs.' " Doe, Sex Offender Registry Bd. No. 10304 v. Sex Offender Registry Bd., 70 Mass. App. Ct. 309, 312-313 (2007) (Doe 10304 ). Hearsay evidence is evaluated for the "requisite indicia of reliability." Id. We elaborated on this "indicia of reliability" standard in Doe 10304, supra, in the particular context of police reports:,
"[A] non-eyewitness police report, standing alone, cannot constitute substantial evidence within the meaning of G. L. c. 30A. See Merisme v. Board of Appeals on Motor Vehicle Liab. Policies and Bonds, 27 Mass. App. Ct. 470 (1989). However, particular narratives related therein may be admissible in board hearings depending on the general plausibility and consistency of the victim's or witness's story, the circumstances under which it is related, the degree of detail, the motives of the narrator, the presence or absence of corroboration and the like."
The examiner reasonably concluded that there was sufficient indicia of reliability here as to the evidence of the 2004 incident. While the critical statement of the victim is third-level hearsay, its reliability is found in the wording the victim herself used, and in the corroborating circumstances reported by the mother and others.[4] We note, as an initial matter, that the plaintiff's arguments do not call into question the substance of the first two layers of hearsay: the police report is not challenged as being an inaccurate record of what the police officer was told by the mother, nor is there a challenge to the mother's statements of what she observed on the day in question or as to what the victim said to her that day. Put another way, the plaintiff does not claim that the mother was an unreliable witness as to what she saw and heard.
That leaves the statement of the victim herself. The plaintiff has consistently denied the accuracy of that statement but as to that statement there are multiple, credible indicia of reliability. The first is the factual allegation itself. As the hearing examiner recognized, the five year old victim's allegation -- that the plaintiff "licked my bum" -- is remarkably similar to the sexual assault that the plaintiff committed on a four year old three decades earlier. See Doe, Sex Offender Registry No. 10800 v. Sex Offender Registry Bd., 459 Mass. 603, 638-639 (2011) (Doe 10800 ). Moreover, there is no suggestion that the victim or her mother knew of the nature of the plaintiff's prior sexual offense.[5] For a five year old to concoct a story by chance that so closely matches the plaintiff's prior sexual offense would be quite a coincidence.
Second, there was considerable additional evidence that corroborated the victim's statement. It is not disputed that the victim and the plaintiff were together on the day in question, behind a closed door. The behavior of both the victim and the plaintiff that day was odd and furtive, and was noticed by the mother. And beyond the behavior that day, there was considerable additional evidence -- from the victim's mother, grandmother, and father[6] -- that corroborated an unusual relationship between the five year old victim and the then thirty-four year old plaintiff, including their frequent phone conversations on the five year old's personal phone, and the amount of time spent together alone.
In short, we discern no abuse of discretion or other error in the hearing examiner's reliance on the 2004 incident. Applying the factors set forth in Doe 10304, 70 Mass. App. Ct. at 312-313, the victim's allegation, related by the mother, had significant inherent indicia of reliability, given the similarity between the 2004 acts and those in 1986. In addition, the mother had no identifiable motive to manufacture the allegation, and there were substantial corroborating facts, including considerable detail as to the events surrounding the alleged assault.
Our conclusion is not altered by the fact that the mother subsequently stated that she did not believe her daughter, or by the fact that the allegation was never prosecuted. There is no mention in the police report that the mother expressed disbelief of her daughter when she first spoke to the police. Rather, the mother's purported disbelief did not surface until after DSS and her own mother started criticizing her because she had left the victim alone with a known sex offender. See Doe 10800, 459 Mass. at 638-639 (denial by teenage victim not significant where explained by desire to hide other sexual contact). The lack of criminal prosecution is likely explained by the mother's subsequent assertion that she did not believe her daughter and by the mother's apparent lack of cooperation, which is evident in the DSS report. In any event, the plaintiff's repeated assertion that the allegations were "deemed unfounded" after the investigations is not supported in this record, which contains no definitive conclusion as to the investigations.[7] No doubt, hearsay allegations of alleged sexual abuse must be carefully scrutinized for reliability before they may be relied upon in proceedings before SORB. The particular allegation at issue, however, passes the test.
We also reject the plaintiff's contention that the examiner did not properly apply the "clear and convincing" evidence standard of Doe 380316, 473 Mass. at 298. That standard applies to SORB's ultimate classification decision, not to subsidiary decisions such as what evidence may be relied upon. See Doe, Sex Offender Registry Bd. No. 523391 v. Sex Offender Registry Bd., 95 Mass. App. Ct. ----, ---- (2019). As to her ultimate classification decision, here the examiner properly identified the "clear and convincing" standard, and carefully reviewed the totality of the evidence in light of the various aggravating and mitigating circumstances defined in SORB's regulations. In addition to evidence of sexual abuse of minors, taking place over three decades, the examiner also pointed out the considerable evidence of the plaintiff's violence toward women in his life, which resulted in five restraining orders, with respect to three different women, from 2009 through 2015. We discern no error in the examiner's application of the clear and convincing evidence standard here.[8]
Finally, the plaintiff contends that the public dissemination of his information under G. L. c. 6, §§ 178I, 178J, and 178K (2), is further punishment for his prior crimes, and thus unconstitutional under a variety of theories -- as an ex post facto law, as a violation of double jeopardy, and as an unlawful deprivation of his liberty and property rights. While the arguments are not exhaustively briefed,[9] the plaintiff primarily argues that the statute's public notice provisions are punitive because as applied to him they are not "carefully calibrated" to protect the State's interest in public safety. See Doe v Attorney Gen., 426 Mass. 136, 151 (1997) (Fried, J., concurring) ("The final element in the constitutional balance is aptness of fit"). The Justices of the Supreme Judicial Court, however, have addressed similar arguments before and rejected them, in the context of a facial challenge to the sex offender registry laws. See Opinion of the Justices, 423 Mass. 1201 (1996). The detailed reasoning in Opinion of the Justices explains the valid regulatory purposes of those laws, and why the laws are not unconstitutionally punitive. See Commonwealth v. Olaf O., 57 Mass. App. Ct. 918, 919 (2008). Subsequent Supreme Judicial Court opinions apply very similar reasoning. Thus, in Coe v. Sex Offender Registry Bd., 442 Mass. 250, 257-260 (2004), the court again explained the statute's nonpunitive purposes, and described the law's dissemination provisions as an "apt fit to contemporary life" and an effective way to promote the state's interest in public safety. See Smith v. Doe, 538 U.S. 84 (2003) (holding that similar notification scheme in Alaskan statute furthered a legitimate nonpunitive government objective). The plaintiff's constitutional arguments accordingly fail.
Judgment affirmed.

Now known as the Department of Children and Families.

A DSS investigator also reported that after the 2004 allegation surfaced, the plaintiff called his mental health advocate and left two voicemails, in which he stated in regards to the allegation, "[W]hoever opened their mouth from DMR [Department of Mental Retardation], I will find the person, hunt them down, stab them to death and feed them to the herd of wolves."

The plaintiff argues in his brief that Merisme, 27 Mass. App. Ct. 470, supports his contention that multi-layered hearsay is not reliable and thus that multi-layered hearsay cannot support the examiner's decision as a matter of law. Merisme, however, does not hold that multi-layered hearsay must be disregarded in administrative proceedings, but instead sets forth the same "indicia of reliability" standard discussed herein. While the police report in Merisme was found unreliable, the court explained that this was due to the lack of other corroborating evidence and the fact that the police report was contradicted on the record. Id. at 475. As discussed infra, the hearsay evidence in this case was sufficiently corroborated, and much of it was not contradicted on the record.

The mother reported that she learned from the plaintiff in October of 2004 that he was registered as a level one sex offender. There is no suggestion in the record, however, that she knew any details of the plaintiff's prior offenses.

Portions of this information are contained in both the police report and the DSS report.

After an investigation DSS found reasons to support the allegations of sexual abuse against the plaintiff, and referred them to the local police.

The plaintiff also claims error because SORB did not view his age (forty-five) as a mitigating factor. The plaintiff urges that the social science supports his contention that anyone over age forty should be viewed as having a diminished risk of reoffense, and he criticizes the SORB's regulations, inasmuch as they do not recognize a substantially diminished risk for offenders with child victims until age sixty. 803 Code Mass. Regs. § 1.33(30) (factor 30) (2016).
There was no error or abuse of discretion here. The plaintiff does not directly challenge the validity of the regulation, and the application of the regulation here was not erroneous. Among other things, the regulation expressly states that advanced age should be given less weight "when an offender continues to demonstrate an active sex drive or general criminality." Here, the plaintiff's actions from 2004 through 2015 did not give reason to believe that his risk of reoffense had diminished.

The briefing does not separate out the various constitutional arguments, or provide case law addressed to each of them. See Mass. R. A. P. 16 (a) (4), as amended, 367 Mass. 921 (1975) (appellate argument "shall contain the contentions of the appellant ..., and the reasons therefor, with citations to the authorities ... relied on").